■ In the Matter of RICHLAND ACRES DEVELOPMENT CORPORATION, Petitioner, v ADIRONDACK PARK AGENCY, Respondent. —Casey, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Washington County) to review a determination of respondent which denied petitioner's application for a commercial sand and gravel extraction permit.

Petitioner owns approximately 185 acres of land in the Town of Fort Ann, Washington County, and proposes to operate a commercial sand and gravel extraction operation on 116 acres of that land. Because the property is located in an area classified as a "moderate intensity use" area (see, Executive Law § 805 [3] [d] [1]) on the official Adirondack Park Land Use and Development Map, petitioner is required to obtain a permit from respondent (see, Executive Law § 809). Following a public hearing, respondent denied petitioner's application due to concerns regarding traffic safety, noise, dust and the project's incompatibility with the moderate intensity use area in which it was to be located.

Petitioner first contends that respondent lacked authority to consider the traffic safety impacts of the proposed project in determining whether to grant a permit pursuant to Executive Law § 809. This contention is based upon the absence of any reference to traffic safety in the relevant statutes, but petitioner overlooks the references to adjoining and nearby land uses and the ability of government to provide facilities and service as factors which relate to the potential for adverse impact (see, Executive Law § 805 [3] [d]; [4] [c], [d]). The State

highway is clearly a nearby use and a governmental facility, and the maintenance of a safe highway could reasonably be considered a governmental service. Accordingly, we conclude that respondent had the authority to consider traffic safety in determining whether to grant petitioner's application *(see, Matter of Schulz v Town of Queensbury,* 150 AD2d 854, 857).

Petitioner's remaining arguments concern the claimed lack of substantial evidence in the record to support the findings that petitioner's project will have certain adverse impacts. In short, petitioner claims that since respondent offered no expert testimony of adverse impacts, the findings were based upon conjecture and speculation. We disagree. Viewed as a whole, the record, including the testimony of petitioner's experts, provides an adequate basis for respondent's findings. Turning first to traffic safety, respondent found that traffic associated with the project would have an undue adverse impact on the intersection with State Route 149 which petitioner's trucks would enter approximately 44 times each day. Statements by local residents, the installation of a blinking light type of control device at the intersection and a traffic accident report for the intersection support respondent's finding that the intersection is dangerous. Petitioner's expert testified that the increase in volume of traffic on Route 149 due to the project would be insignificant, but he conceded that accelerating or decelerating trucks on Route 149 would present a concern for other traffic entering the intersection. He was of the opinion that there was sufficient sight distance to avoid any problems, but he based this opinion on measurements from an unidentified plan, not upon personal observations. We conclude that all of the evidence, together with the reasonable inferences to be drawn therefrom, provides a rational basis and substantial evidentiary support for respondent's finding.

Respondent also found that noise and dust would have an adverse impact on nearby residents. Petitioner does not dispute that noise and dust are by-products of a sand and gravel operation, but claims its expert evidence establishes that the mitigation measures included in the proposal adequately addressed these concerns. As to sound, petitioner claims that by using vegetated buffers, earthen berms, muffled equipment with modern back-up alarms, and by operating below grade level, the loudness of the noise from the operation would be perceived at nearby residences as no greater than that of preexisting traffic noise. There is evidence in the record, however, that loudness alone does not establish the impact of

noise. Frequency and duration of the noise, and variations in frequency, along with the annoyance level of the person receiving the noise, are also factors. The operating hours are proposed to be from 7:00 A.M. to 6:00 P.M. during the spring, summer and fall months, and petitioner's president conceded that during lulls in the ambient noise level the mining operations would be discernible. As to dust, petitioner claims that the proposal to water access roads would minimize dust due to truck traffic and that prevailing winds would carry most of the dust away from nearby residences. Given the size of the area to be opened up, and the conceded potential for storm winds from a direction which would carry dust toward the residences, respondent found that dust would have an adverse impact. We conclude that the evidence in the record and the reasonable inferences to be drawn therefrom provide the necessary support for respondent's determination as to both noise and dust.

The final factor in respondent's determination concerned the incompatibility of the proposed project with the particular moderate intensity use area in which it was to be located. Pursuant to Executive Law § 805 (3) (d) (4), a commercial sand and gravel extraction operation is a secondary use in a moderate intensity use area, which means that it is "generally compatible with such area depending upon [its] particular location and impact upon nearby uses" (Executive Law § 805 [3] [a]). Respondent based its finding of incompatibility upon the size of the project, its location within 1,000 feet of some 30 single-family residences and mobile homes, and the potential adverse impact as to noise, dust and traffic safety. Again, we find a rational basis and substantial evidentiary support in the record for this finding.

Respondent's determination as to all four factors is based in part upon the size of the proposed project. Petitioner contends that the determination is, therefore, erroneous since petitioner has proposed to modify the size of the project so that no more than 20 acres will be used at any one time. This proposed modification was submitted long after the record had been closed and only after petitioner had received the draft order prepared by respondent's staff. The proposed modification was not discussed at the hearing and was not subject to the review process. Accordingly, respondent properly ignored the modification. We note, however, that respondent's determination expressly permits petitioner to seek approval of a smaller scale operation.

Determination confirmed, and petition dismissed, without

costs. Mahoney, P. J., Casey, Weiss, Levine and Harvey, JJ., concur.