In the Matter of M. LEO FRIEDMAN et al., Petitioners, v ADIRONDACK PARK AGENCY, Respondent.

Third Department, February 7, 1991

34

APPEARANCES OF COUNSEL

*Davis & Finucane (G. Gordon Davis* of counsel), for petitioners.

*Robert Abrams, Attorney-General (Joan Leary Matthews, Peter H. Schiff* and *Douglas H. Ward* of counsel), for respondent.

**OPINION OF THE COURT**

WEISS, J.

Petitioners applied to respondent for a permit to subdivide 67 acres of land in the Town of Schroon, Essex County, into 33 residential building lots. Following a prehearing conference and a subsequent public hearing, respondent issued a permit which imposed 16 conditions. The permit authorized development into only 15 lots and required formation of a homeowners' association before the sale of any lots for the purpose of "maintaining, monitoring and regulating the individual on-site raised fill sewage systems on each lot". Petitioners commenced this CPLR article 78 proceeding to challenge the conditions imposed in the permit. Supreme Court held that the issue of substantial evidence permeated all the causes of action set forth in the petition and transferred the proceeding to this court.

Petitioners first contend that respondent violated their administrative due process rights by applying to their applications rules, standards and criteria of which they had not been previously informed or prepared to meet, and by changing and diminishing the project without notice or warning to them. The number of lots in the approved subdivision was reduced from 30 to 15 and the width of each lot increased from 98 feet

to 250 feet. Petitioners further contend that respondent's review of the project employed a "cumulative impact" theory which had never been explained to them and which had no roots in either the legislation which created respondent (see, Executive Law art 27) or the regulations adopted by it. They contend that the use of the theory had a discriminatory effect upon them because it considered their previous land development projects as well as possible future projects on land owned by them within the drainage basin of Horseshoe Pond Brook.

■ The controversy can be directly focused upon petitioners' proposed use of individual raised fill sewage disposal systems to be built on each lot. Respondent's environmental concerns centered upon the difficulty in design, construction and maintenance of these systems, along with the fear that they could contaminate the groundwater and ultimately the surface water of Horseshoe Pond Brook which is about 1,000 feet from the project and which is suitable for fishing and fish (trout) propagation. Assuming that this project alone could perhaps be safe, respondent found that the over-all effect, taken together with other existing developments and possible future projects, could cumulatively produce the contamination feared. The expressed intent of the Legislature is clearly set forth in the ECL, i.e., that to the fullest extent possible all statutes and regulations be interpreted in accordance with the policies of the statute (ECL 8-0103 [6]) and that all agencies give appropriate weight to the enhancement of the environment and due consideration to preventing environmental damage (ECL 8-0103 [7]). Moreover, cumulative analysis of related projects should be considered for an environmental impact statement (hereinafter EIS) (6 NYCRR 617.11 [a] [11]) as well as for an unrelated EIS (6 NYCRR 617.15 [a] [1]; see also, Matter of Save the Pine Bush v City of Albany, 70 NY2d 193, 206). Notwithstanding the fact that there was no requirement for an EIS for the instant application, respondent was correct in examining all factors of this project as well as others proximately located to evaluate the cumulative impacts (see, Executive Law § 805 [4] [a]; Matter of Richland Acres Dev. Corp. v Adirondack Park Agency, 161 AD2d 1011; Matter of Schultz v Town of Queensbury, 150 AD2d 854, 857).

■ Petitioners next argue that respondent ignored its filed regulations pertaining to raised fill sewage disposal systems and instead employed ad hoc criteria respecting minimum lot widths, lot sizes, cumulative impact and homeowners' associa-

tions without prior notice to petitioners. We cannot agree with this argument. Initially, we note that the cases upon which petitioners rely are distinguishable in that they all pertain to administrative hearings in which either licenses were revoked or other discipline imposed (see, *Matter of Warder v Board of Regents*, 53 NY2d 186, *cert denied* 454 US 1125; *Matter of Simpson v Wolansky*, 38 NY2d 391; *Matter of Murray v Murphy*, 24 NY2d 150; *Matter of Sorrentino v State Liq. Auth.*, 10 NY2d 143; *Matter of Signet Constr. Corp. v Goldin*, 99 AD2d 431; *Matter of Washington County Cease v Persico*, 99 AD2d 321, *affd* 64 NY2d 923). Here, petitioners were obligated to prove that they had met the criteria for issuance of a permit (see, 9 NYCRR 580.14 [b] [6] [i]). Contrary to petitioners' argument, respondent was not limited to the standards and guidelines for raised fill systems promulgated by the Department of Health (see, 10 NYCRR Appendix 75-A) and the Town of Schroon in its Sanitary Code which generally permit their use for existing dwellings, but only as a last resort. Here, petitioners seek to employ such systems for a development of new dwellings over which respondent has authority to approve or disapprove the use of such sewage disposal systems.

■ Petitioners also argue that respondent abrogated the over-all intensity guidelines prescribed in the Adirondack Park Agency Act (see, Executive Law § 805 [3] [d] [3]) which in this instance limit development to no more than 500 principal buildings per square mile, or 1.28 acres per building. The conditions imposed by respondent here result in four acres per building, which petitioners argue has no legitimate basis or authority. They argue that all possible problems from sewage systems and soil conditions were considered in computing the established density requirement and that respondent lacked authority to deviate from the statute. Again, we must disagree for the Adirondack Park Agency Act required that respondent take into consideration any possible adverse impact upon the Adirondack Park resources, in this case possible water contamination from above ground sewage systems (see, Executive Law § 809 [10] [e]).

■ We further find unpersuasive petitioners' contentions that because raised fill sewage systems have previously been permitted in the Adirondack Park, approval must be forthcoming here. The regulation at issue (10 NYCRR Appendix 75-A [75-A.9]) specifically states that they should only be used as a last resort if no other alternative is possible. Therefore, it

was not an unreasonable condition to reduce the number of systems which would be gathered together in a single location, or to provide a mechanism in the form of a homeowners' association for monitoring (see, Executive Law § 809 [13]). Petitioners cannot deny that they had become aware of respondent's concerns about raised fill sewage systems, certainly after they were given a preliminary memorandum at the prehearing meeting prepared by respondent's staff engineer which reported that the proposed sewage systems were inappropriate on certain of petitioners' lots and problematical on others. The imposition of conditions was clearly an effort by respondent to prevent problems and did not constitute denial of due process of law.

■ Finally, we reject petitioners' argument that the determination lacks support from substantial evidence in the record. Their contentions again focus upon the proposed raised fill sewage systems which respondent determined would constitute a danger to water quality in the Horseshoe Pond Brook drainage basin. Respondent offered testimony from its staff engineer and project review specialist as expert witnesses while petitioners countered with their own experts. It is now well settled that an administrative agency may choose between conflicting expert testimony (Matter of Power Auth. v Williams, 101 AD2d 659, lv denied 63 NY2d 605; Matter of City of New York v Larocca, 97 AD2d 666) and that such choice will not be disturbed by a reviewing court unless it is irrational or contrary to law, neither of which pertain here.

In sum, we find that none of the arguments presented by petitioners require that we disturb respondent's determination.

MAHONEY, P. J., MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Determination confirmed, and petition dismissed, without costs.