■ In the Matter of TIMOTHY P. JONES, Petitioner, v ADIRONDACK PARK AGENCY, Respondent. [704 NYS2d 334] —Mercure, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Franklin County) to review a determination of respondent which restrained petitioner from constructing a dwelling without a permit.

In April 1992, respondent became aware that petitioner was constructing a dwelling on his property on Dugal Road in the Town of Altamont, Franklin County. Respondent immediately advised petitioner that a permit was required for construction of the dwelling, which was situated in an area designated low intensity on the official Adirondack Park Land Use and Development Plan Map. On April 21, 1992, respondent's enforcement staff issued a cease and desist order, but petitioner apparently continued with construction of his dwelling. In January 1993, Supreme Court issued a preliminary injunction restraining further work on the project without a permit.

On June 1, 1995, respondent issued a notice of petitioner's apparent violation of the Adirondack Park Agency Act (Executive Law art 27), the Freshwater Wetlands Act (ECL art 24,

titles 7, 8; 9 NYCRR part 578) and the Wild, Scenic and Recreational Rivers System Act (ECL art 15, tit 27; 9 NYCRR part 577) and, more particularly, Executive Law § 809 (2) (a) (pursuant to Executive Law § 810 [1] [c] [1] [b]; 9 NYCRR 578.2 [a]; 578.3 [n] [1] [i], [iv]; 577.4 [a]; 577.5 [c] [1]), in constructing a single-family dwelling in and involving wetlands, in a recreational river area, and in a low intensity land use area without a permit. Ultimately, a hearing was conducted before an Administrative Law Judge employed by the Department of Environmental Conservation (hereinafter DEC). After reviewing the record and briefs submitted by the parties, respondent's Enforcement Committee issued a determination finding that the facts and applicable law were as stated in the notice of apparent violation. Following an administrative appeal by petitioner, on August 9, 1996 respondent affirmed the Enforcement Committee's determination and issued its own findings of fact and conclusions of law. In this CPLR article 78 proceeding, transferred to this Court pursuant to CPLR 7804 (g), petitioner challenges respondent's determination on numerous grounds, all of which are found to be lacking in merit.

In our view, respondent's determination that petitioner violated the Adirondack Park Agency Act and Freshwater Wetlands Act by constructing a dwelling in a jurisdictional wetland without an agency permit is supported by substantial evidence in the record. As a threshold matter, we reject the contention that respondent has no jurisdiction over petitioner's lot because it is part of a subdivision that was lawfully in existence prior to August 1, 1973 (see, Executive Law § 811 [3] [a], [c]; § 802 [49]; 9 NYCRR 570.3 [ll], [mm]). Although there is no question that a subdivision map had been filed prior to August 1, 1973, the record indicates that the subdivision never received Department of Health approval, as required by Executive Law § 811 (3) (c). Petitioner's effort to enlarge respondent's stipulation to treat petitioner's lot as if it were a lot in a preexisting subdivision to one conferring the status of a subdivision "lawfully" in existence prior to August 1, 1973 (see, Executive Law § 802 [49]; 9 NYCRR 570.3 [ll]) has no support in the record. To the contrary, respondent maintained throughout the hearing that the subdivision had never obtained the requisite Department of Health approval.

We also reject petitioner's contention that the evidence fails to support a finding that petitioner's construction of a single-family dwelling on his lot constituted "development * * * of land * * * involving wetlands" (Executive Law § 810 [1] [c] [1] [b]). Notably, "wetlands" may include "any land which is annu-

ally subject to periodic or continual inundation by water and commonly referred to as a bog, swamp or marsh which [is] * * * located adjacent to a body of water, including a permanent stream, with which there is free interchange of water at the surface" (Executive Law § 802 [68] [b]). Wetlands biologist Raymond Curran testified that he observed jurisdictional wetlands on petitioner's lot, that there was a periodic free interchange of water between the wetland cover-types that he observed on petitioner's lot and the nearby Raquette River, and that the construction was occurring partially or wholly within coniferous and shrub wetlands situated on petitioner's lot. Notably, Curran testified that he observed wetland cover-types on petitioner's lot, including a coniferous wetland or shrub wetland in the slightly higher areas and an emergent or serge meadow wetland type in the lower areas. At the time of his May 6, 1992 visit to the site, he observed the property to be inundated with waters from the Raquette River. At the time of a July 24, 1992 visit, the area was not inundated but showed hummocky topography which, according to Curran, "is an indicator of shallow rooting conditions and another indicator of wetland presence".

In view of the foregoing and other hearing evidence not at issue here, we conclude that the record provides ample evidentiary support for a finding that petitioner commenced a class A regional project and wetlands project without an Adirondack Park Agency permit in violation of the Adirondack Park Agency Act and Freshwater Wetlands Act (*see, Matter of Richland Acres Dev. Corp. v Adirondack Park Agency*, 161 AD2d 1011, 1012; *Matter of Pfau v Adirondack Park Agency*, 137 AD2d 916, 918). At best, the contrary lay testimony presented by petitioner created a credibility issue which respondent was entitled to and obviously did resolve against him.

Turning briefly to some of petitioner's additional contentions, we first conclude that petitioner has not shown that he was aggrieved by the memorandum of understanding between respondent and DEC relative to respondent's use of DEC Administrative Law Judges in formal hearings, respondent's failure to adopt rules for formal hearings or the Enforcement Committee's failure to state findings of fact and conclusions of law in its decision. Notably, the DEC Administrative Law Judge acted solely as a Hearing Officer and took no part in the deliberative process. Further, petitioner appears to have interposed no timely challenge to the manner in which the hearing was conducted and the record provides no support for his claims that he was unable to properly prepare for and was surprised

throughout the hearing. As for the attack on the decision of the Enforcement Committee, it should suffice to note that any deficiency was remedied by the subsequent decision of the full agency, which is the determination at issue here.

We are similarly unpersuaded that petitioner was prejudiced by any undue delay in the proceedings. In view of respondent's concession that a subdivision map had been filed prior to August 1, 1973, the death of witnesses having firsthand knowledge of that fact could not have caused petitioner to suffer the requisite substantial actual prejudice (*see, Matter of Diaz Chem. Corp. v New York State Div. of Human Rights*, 91 NY2d 932, 933; *Matter of Miller v Department of Motor Vehicles*, 234 AD2d 627). Finally, respondent's inconsistent prior determination to issue a permit with regard to another subdivision lot, which was based on an erroneous application of the law, did not estop respondent from rendering the present determination. Respondent was by no means bound to repeat its prior error (*see, Matter of Parkview Assocs. v City of New York*, 71 NY2d 274, 282, *cert denied* 488 US 801; *Matter of Cowan v Kern*, 41 NY2d 591, 595-596; *Matter of Sheer Pleasure Lingerie v Town of Colonie Planning Bd.*, 251 AD2d 859, 861).

Cardona, P. J., Peters, Spain and Carpinello, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.