OPINION OF THE COURT
Wachtler, J.
On this appeal we are asked to consider whether State officials should be prevented from taking immediate action on an emergency plan to convert an unused portion of a State mental institution (Marcy Psychiatric Center) into a correctional facility. Two issues are presented for review. First it is argued that the proposed plan would violate subdivision (b) of section 7.11 of the Mental Hygiene Law which prohibits the Commissioner of Mental Hygiene from discontinuing this particular facility. Secondly it is urged that no action may be taken on the project until an environmental impact statement has been filed and reviewed pursuant to ECL 8-0109 (SEQRA).
The Supreme Court granted relief against the State on both grounds. The Appellate Division found that only the second point had merit and modified the order accordingly. Both sides have appealed to this court. The petitioners’ appeal has been taken as a matter of right on the basis of the modification. The State officials have appealed by leave of this court.
We have concluded that the order of the Appellate Division should be further modified by dismissing the petition. In our view neither of the arguments asserted provides any basis for granting the relief requested.
The record shows, and indeed it is a matter of common knowledge, that there is a critical shortage of correctional facilities in this State. Although the problem has existed *17 for some time, it has become particularly acute in recent years. The adoption by the Legislature of stricter rules requiring mandatory sentences for those convicted of major offenses has dramatically increased the prison population. However, there has not been a comparable increase in the funds necessary to provide additional correctional facilities. The resulting overcrowded conditions have, on several occasions, prompted the Federal courts to intervene by directing State officials to make additional facilities available for the proper treatment of prisoners. On occasion the tensions created by overcrowding have also led to violence, most notably at Attica and Ossining.
The ultimate solution undoubtedly may well be for the State to construct additional correctional institutions. That, however, would require considerable time to implement and additional tax levies. In the interim the newly elected Governor has decided to alleviate the crisis by employing existing State facilities which were originally constructed for other purposes but are presently being underutilized. In February the Governor identified the Marcy Psychiatric Center (Marcy) as one suitable for this purpose. In March the Legislature appropriated the funds necessary to convert a portion of that facility into a medium security correctional institution.
The planned project involves two phases. Phase I provides for the housing of 300 inmates at Marcy. Phase II contemplates the transfer of an additional 900 inmates to Marcy. This latter phase, however, would require additional legislative funding and approval and is not scheduled to begin until 1985.
The Commissioner of Correctional Services, charged with the implementation of the project, issued a “positive declaration” on May 9, recognizing that the proposed conversion could have an impact on the environment. Accordingly he made known his intention of filing an environmental impact statement as required by ECL 8-0109. Although that statute generally prohibits a governmental agency from taking any action until the environmental impact statement has been filed and reviewed (see, e.g., Matter of Tri-County Taxpayers Assn. v Town Bd. of Town of Queensbury, 55 NY2d 41), the applicable regulations *18 contain an exception for actions “immediately necessary on a limited emergency basis for the protection or preservation of life, health, property or natural resources” (6 NYCRR 617.2 [o] [6]). Pursuant to that regulation the Commissioner of Correctional Services also issued on May 9 a “Declaration of Emergency”, designating the Marcy project as an emergency action “because immediate action must be undertaken and there is insufficient time, to commence and complete SEQRA Review prior to the commencement of the action.”
The present suit, originally brought as an action for an injunction, was converted by the Supreme Court into an article 78 proceeding because it challenges the authority or jurisdiction of the various State officials involved in the Marcy project. As noted, the court agreed with the petitioners that the contemplated action would violate subdivision (b) of section 7.11 of the Mental Hygiene Law which provides that certain facilities, including Marcy, “may not be discontinued by the commissioner [of Mental Hygiene]”. In reaching this conclusion the court noted that section 1.03 of the Mental Hygiene Law defined a “facility” as including a “building”, and that under Phase I of the project “5 buildings will be discontinued”. The court also held that the project did not involve an emergency within the meaning of 6 NYCRR 617.2 (o) (6) because “these efforts indicate an ongoing process, not an emergency” and there is no “immediate” need to convert this particular facility to correctional uses. Thus the court held the State could not proceed without additional authorization from the Legislature to “discontinue” the facility, and even then could not take any action until an environmental impact statement had been filed and reviewed.
The Appellate Division on the other hand found no violation of subdivision (b) of section 7.11 of the Mental Hygiene Law noting that Phase I of the project only involved the conversion of 5 of the 35 buildings at the center. “The remaining 30 buildings will continue in use as a psychiatric facility”. The Appellate Division agreed with the Supreme Court, however, that implementation of Phase I did not constitute an exempt emergency action under 6 NYCRR 617.2 (o) (6) because it is part of a *19 “permanent conversion of all or part” of the facility into a medium security prison.
On the appeal by the petitioners we conclude, as the Appellate Division did, that the project does not represent a discontinuance of the facility. Section 1.03 of the Mental Hygiene Law defines a facility as “any place in which services for the mentally disturbed are provided and includes but is not limited to a psychiatric center, developmental center, institute, clinic, ward, institution, or building”. Although it is clear that under this definition a building may constitute a facility, it is equally clear that the Legislature viewed a facility as a separate entity which may range in size from a portion of a building, as is often the case with a ward or clinic, to a multibuilding complex such as a psychiatric center or institute. In the latter case the closing or conversion of a single building could not reasonably be considered a discontinuance of the facility.
In addition, and more significantly, section 7.11 of the statute does not prohibit the commissioner in all cases from discontinuing a facility. On the contrary, it specifically authorizes him to “continue, establish, discontinue, expand, and contract facilities under his jurisdiction”, with the exception of certain facilities set forth in section 7.17 which “may not be discontinued by the commissioner”. One of these “facilities” designated in that section is the “Marcy Psychiatric Center”. Thus it is evident that the Legislature itself considers this particular center as a “facility” which may be contracted, but not discontinued. That is precisely what would occur under the plan now before us. The center would be contracted, by converting a number of unused buildings to other purposes, but even under Phase II a core of buildings would continue to serve the needs of the mentally ill.
On the appeal by the Commissioner of Correctional Services, and other State officials, we do not agree with the courts below that all action must be postponed on the project until an environmental impact statement has been filed and reviewed. In reaching their conclusions the courts below appear to have applied the incorrect standard of judicial review of the determination by the commissioner that the actions now at issue are “immediately necessary *20 on a limited emergency basis” and thus exempt under 6 NYCRR 617.2 (o) (6). The standard of review is not whether we or the courts below would conclude that a limited emergency exists; it is rather whether the determination by the Commissioner of Correctional Services that such an emergency exists was irrational or arbitrary or capricious. In our view the commissioner could reasonably find that the Marcy project represents emergency action within the meaning of the applicable regulation, sufficient to provide some dispensation from the requirements generally governing environmental statements.
The petitioners urge that the regulation was only “intended to allow immediate steps to be taken during a limited emergency such as blocking off a water source when a dam breaks”. Concededly the case now before us does not present the classic example where immediate action is required to meet an emergency in which the effect of the action may be immediately realized. There is apparently no quick solution which will immediately eliminate the problems of overcrowded jails. But that doés not mean that there is no crisis or that there is no need to take immediate action to lay the foundation for a program which may provide relief in the near future. State officials confronted with an ever increasing influx of inmates into a prison system, already filled to well over 100% of capacity, can hardly be said to be acting irrationally if they conclude that some action must be taken immediately to avert in the future the violence which has occurred in the past.
Neither can it be said that the decision to take immediate action at this time is unreasonable because prison overcrowding is a problem of long standing in this State. Emergencies are often precipitated by the failure to take needed action in the past despite adequate warning. Certainly in the example provided by the petitioners no one would suggest there was no emergency and that public officials would be required to file an environmental impact statement before they could divert a water source in the face of a bursting dam if the potential defect in the dam had long been a matter of common knowledge.
The Appellate Division apparently was more concerned with the fact that the Marcy project appears to be a *21 permanent measure and not the type of temporary response typically associated with emergencies. This, of course, would be an important consideration if the State were seeking complete exemption from all the requirements of the SEQRA. But here the State has recognized its obligation to file an environmental impact statement*, submit to the review required by the statute and take all action necessary to minimize the impact of the project prior to completion. It only urges dispensation from the general requirement that no action be taken on the project prior to the filing and subsequent review proceedings.
All the State has done so far, and intends to do in the next few months, is refurbish several of the buildings at the facility by restoring masonry, painting, improving fire safety apparatus and the like. No action will be taken irrevocably referable to the conversion of the buildings for correctional uses. Neither will any prison inmates be transferred to the facility prior to November, 1983. Thus the only actions at issue on this appeal are limited to steps immediately necessary to cope with the emergency and therefore permissible under the regulation (6 NYCRR 617.2 [o] [6]).
Accordingly, the order of the Appellate Division should be modified by dismissing the petition.
Chief Judge Cooke and Judges Jasen, Jones, Meyer and Simons concur.
Order modified, with costs to respondents-appellants in accordance with the opinion herein and, as so modified, affirmed.

 Prior to oral argument we were informed that the statement was prepared and filed and is now awaiting review.