OPINION OF THE COURT
Edward H. Lehner, J.
This is a motion for a preliminary injunction by a committee of City Island organizations (Chamber of Commerce, Civic Association, Preservation Association and American Legion Post) to enjoin construction by the City of New York of a correctional facility on Hart Island. This island lies within the city, approximately one third of a mile from City Island in Long Island Sound, and is reached by ferry from a dock on City Island. City Island is reached from the Bronx mainland by a two-lane bridge.
The bases for plaintiff’s application are the following: (1) defendants have failed to file an environmental impact statement (EIS) prior to commencing construction, in violation of the State Environmental Quality Review Act (SEQRA) and the City Environmental Quality Review procedure (CEQR); (2) defendants have failed to comply with the City Uniform Land Use Review Procedure (ULURP); (3) defendants are operating a septic system in violation of the Federal Clean Water Act of 1977 (33 USC § 1251 et seq.) and article 17 of the State Environmental Conservation Law (ECL); and (4) defendants are carrying out construction in a tidal wetlands zone without a permit in violation of ECL article 25.
The instant application is supported by various affidavits, but a complaint has not as yet been filed, which failure the defendants assert is a fatal defect in the application.
FACTS
Section 9-103 (formerly § 623 [l]-2.0) of the Administrative Code of the City of New York provides that the "lands and buildings on Hart’s Island shall be utilized for the segregation of prisoners transferred thereto by the commissioner of correction.” The Department of Correction (the Department) has housed inmates on the island since 1895 with the exception of three periods (1950-1954; 1966-1982, when Phoenix House operated a drug rehabilitation center at the Department’s facilities; and July-Sept. 1986).
During the periods when prisoners were not housed on Hart *523 Island, inmates worked there to handle burials at Potter’s Field, an area on the island where unclaimed bodies are buried. Currently the Department houses 60 inmates on the island who do work on burials and cleaning.
On March 26, 1987, the Board of Estimate passed both Resolution No. 58, which called for the "expansion and reopening of several modular dormitories on Hart Island” and appropriated moneys therefor; and Resolution No. 73, which authorized the Department of General Services to enter into contracts (with limited competitive bidding) for the purchase and installation of four modular housing buildings of 100 beds each on the island. The latter resolution further called for the renovation of existing structures, as well as the installation and connection of utility services and improvements on the dock and waterfront necessary for the operation and occupancy of the buildings.
Although the city has not complied with ULURP, nor filed an EIS, the Mayor held a "Town Hall” meeting in the area on June 24, 1987 to explain the city’s plans, and city officials have been in contact with the community board for the area.
Some of the commitments made by defendants are as follows: only the "lowest risk” prisoners, with less than 120 days remaining on their sentences, will be assigned to Hart Island; all visits to inmates will take place at the Bronx House of Detention; only two buses per day will be used to transport prisoners for such visits; and a Department shuttle bus will transport personnel to the ferry dock from a parking area on the Bronx mainland.
FAILURE TO SERVE A COMPLAINT
Defendants assert that "when the basis for the requested preliminary injunction is the same as the basis for the underlying action, a complaint must be submitted in support of the preliminary injunction motion”, and cite Matter of Seplow v Century Operating Co. (56 AD2d 515) in support. The essence of the holding in that case was that where the basis for the injunction is the "nature of the plaintiffs action”, a complaint is required. However, here if injunctive relief were to lie, it would not be based on the nature of the action (i.e., an action seeking a permanent injunction under the second alternative ground set forth in CPLR 6301), but rather on the assertion that defendants were performing acts in violation of plaintiffs rights. Hence, the failure to serve a complaint is of no conse *524 quence in the consideration of this motion. (See, Somerset R. R. Corp. v Graham, 89 AD2d 819; Fairfield Presidential Assocs. v Pollins, 85 AD2d 653; Taylor v Haddad Corp., 118 Misc 2d 253; Siegel, NY Prac § 329.)
SEQRA
SEQRA was enacted by the Legislature in 1975. The policy goals and procedures set forth therein are summarized by the Court of Appeals in Matter of Jackson v New York State Urban Dev. Corp. (67 NY2d 400, 414).
CEQR was promulgated by the Mayor as Executive Order 91 issued in August 1977 to implement SEQRA in the City of New York, and its provisions closely parallel the State law.
A basic determination under SEQRA and CEQR is whether an EIS is required in connection with a proposed project, the resolution of which depends on whether the project "may have a significant effect on the environment.” (ECL 8-0109 [2].)
Here the defendants claim an exemption from filing an EIS prior to the commencement of any work under the "limited and temporary” emergency provision set forth in 6 NYCRR 617.2 (q) (4), which reads as follows: "[Ejmergency actions which are immediately necessary on a limited and temporary basis for the protection or preservation of life, health, property or natural resources, provided that such actions are directly related to the emergency and are performed to cause the least change or disturbance, practicable under the circumstances, to the environment. Any decision to fund, approve or directly undertake other activities after the emergency has expired is fully subject to the review procedures of this Part”. A similar emergency provision is contained in CEQR.
Defendants represent that a statement is being prepared "which will enable the lead agencies to determine if the project has a significant environmental impact” requiring the preparation of an EIS.
The emergency claimed here is the overcrowding in the city prisons which in 1983 caused Federal Judge Morris Lasker to direct the release of over 600 detainees. The city asserts that since 1983 it has added 4,911 prison beds, and expects to add over 7,000 beds by 1993. In recent months Judge Lasker temporarily permitted the city to house sentenced inmates in cells under the minimum State standard of 60 square feet per person.
There is no question that the shortage of prison beds has *525 created, and continues to create, a crisis for the City of New York, which can be said to be an emergency. It is clearly not the type of emergency that will result in imminent disaster if action is not taken forthwith. However, the creation of prison space to handle the increasing numbers of persons detained and sentenced for imprisonment in city prisons requires action, with some dispatch, to comply with the prisoners’ constitutional rights and avoid another forced release of inmates.
In two cases reaching the Court of Appeals, correction officials were permitted under the aforesaid emergency regulation to commence construction prior to the filing of an EIS.
In Matter of Board of Visitors — Marcy Psychiatric Center v Coughlin (60 NY2d 14) the court permitted renovation of a mental institution to permit its use as a correctional facility. The court noted that no action was being taken that would be irrevocable and no prisoners were to be transferred until the SEQRA process was complete. In that case the Commissioner of Correctional Services determined that the renovation would have an impact on the environment and issued a "positive declaration” that an EIS would be issued. In commenting on the emergency regulation the court said:
"Concededly the case now before us does not present the classic example where immediate action is required to meet an emergency in which the effect of the action may be immediately realized. There is apparently no quick solution which will immediately eliminate the problems of overcrowded jails. But that does not mean that there is no crisis or that there is no need to take immediate action to lay the foundation for a program which may provide relief in the near future. State officials confronted with an ever increasing influx of inmates into a prison system, already filled to well over 100% of capacity, can hardly be said to be acting irrationally if they conclude that some action must be taken immediately to avert in the future the violence which has occurred in the past.
"Neither can it be said that the decision to take immediate action at this time is unreasonable because prison overcrowding is a problem of long standing in this State. Emergencies are often precipitated by the failure to take needed action in the past despite adequate warning.” (Supra, at 20.)
In Matter of Gerges v Koch (62 NY2d 84) the Board of Estimate approved a program for the renovation of the Brooklyn Navy Yard Brig (a Federal facility) into a city medium *526 security prison. After commencement of a proceeding to enjoin the renovation, a "negative declaration” was issued by city agencies finding that the use of the brig would not have a significant impact on the environment. The Appellate Division (101 AD2d 201) reversed Special Term’s grant of an injunction, ruling that the emergency declaration by the Commissioner was not irrational, arbitrary or capricious "given the facts of the city’s critical shortage of jail capacity and the renewed expansion of the jail population”. (Supra, at 204.) In affirming, the Court of Appeals declined to review the "negative declaration”, ruling that such determination could only be reviewed in a separate proceeding. (Supra, at 96.)
Other cases relying on the emergency regulation to deny injunctive relief to proposed action are: Spring-Gar Community Civic Assn. v Homes for Homeless (135 Misc 2d 689) and Vann v Koch (NYU, Feb. 20, 1987, at 16, col 4 [Sup Ct, Kings County]).
It appears, however, that plaintiff is correct in its contention that in none of these cases was the validity of the emergency regulation raised. Plaintiff urges that since the legislation does not authorize an exemption from compliance based on an emergency, the Commissioner of the Department of Environmental Conservation lacked authority to promulgate the regulation.
On the issue it should first be noted that the subject regulation is to be differentiated from the "exclusions” authorized in ECL 8-0111 (5) and carried forward into the regulations at 6 NYCRR 617.2 (p). An EIS need not ever be filed for matters excluded, whereas the emergency provision is "limited and temporary”. (6 NYCRR 617.2 [q] [4].)
Second, a regulation adopted by an agency empowered to promulgate regulations and administer a body of law is not to be disturbed by a court unless " 'so lacking in reason for its promulgation that it is essentially arbitrary’ ” (Matter of Bernstein v Toia, 43 NY2d 437, 448), and "[t]he interpretation given a statute by the administering agency 'if not irrational or unreasonable, should be upheld.’ ” (Ostrer v Schenck, 41 NY2d 782, 786.)
Third, the emergency regulation (in a slightly different form) has been on the books since 1978, and although the Legislature has amended SEQRA since then, it has not in any manner sought to affect this provision. This is some indication that the regulation is not contrary to the Legislature’s intent. *527 (See, Matter of National Elevator Indus. v New York State Tax Commn., 49 NY2d 538, 548.) "A fundamental rule of construction provides that the Legislature, when enacting an amendment or new legislation, is presumed to know and be aware of the law existing at that time” (Matter of Thomas v Bethlehem Steel Corp., 95 AD2d 118, 120).
The court finds that the adoption of emergency regulations is reasonable when considering the goals of SEQRA and CEQR as it is prudent that at times government be able to act promptly when faced with a condition that cannot await the completion of the SEQRA process. Therefore, the regulation is valid.
Although the prison crisis does not have the same immediacy as the need to respond to a flood or other disaster, the Court of Appeals in Marcy (supra) and Gerges (supra) (without being faced with a challenge to the validity of the regulation) concluded that the prison crisis does fall within the definition of an emergency as used in the regulation.
ULURP
Section 197-c (a) of the New York City Charter provides that "proposals and applications by any person or agency for changes, approvals, contracts, consents, permits or authorization thereof, respecting the use, development or improvement of real property subject to city regulation shall be reviewed pursuant to a uniform review procedure” in certain cases. Plaintiff asserts that the proposal for the new prison on Hart Island requires review under paragraph (5) of said section which refers to "[s]ite selection for capital projects”.
Defendants assert that review is unnecessary as "there has been no real estate transaction or change in land use constituting a site selection,” as "with some interruptions Hart Island has functioned as a correction facility for over 100 years and, in the 1960s, over 1,000 inmates were incarcerated there.”
In Matter of Gerges v Koch (supra, at 93) the court found that the license obtained from the Federal Government to use the navy yard brig for a city correctional facility was a " '[s]ite selection for [a] capital project’ ”. The situation here is obviously different because of prior city ownership of the property. However, the proposal, which contemplates the demolition of existing prison buildings and the replacement with four modular units with a total capacity of 400 beds, will *528 result in a prison over six times larger by population than that now existing. This, in actuality, is the construction of a new and substantially larger prison, which will require a substantial increase in staff and support services. Therefore, the court finds that in determining to develop this new correctional facility, the Board of Estimate made a site selection for a capital project, and should have complied with the ULURP procedure.
In Gerges (supra), faced with its determination that the city should have complied with ULURP before completing the renovation of the brig, the court, nevertheless, declined to enjoin the city from transferring prisoners to the facility. In so ruling, the court observed that the "determination of the availability of such relief depends not alone on the right of the party seeking it but as well on the appropriateness of its issuance in the circumstances in which it is sought” (Matter of Gerges v Koch, 62 NY2d, supra, at 95). In considering the circumstances, the court went on to say: "We take note that respondents are confronted, in consequence of orders of the Federal courts and otherwise, with an emergency of compelling and dangerous dimension and seriousness. That this emergency might have been foreseen and that municipal officials may have been derelict in not earlier having made appropriate provision for its resolution and having assured the availability of adequate detention facilities does not negate the existence of the present crisis.” (Supra, at 95.)
FACTUAL ISSUES
Plaintiff’s claims that the city is operating a septic system in violation of Federal and State laws, and is carrying out construction in tidal wetlands without a permit in violation of State law are denied by defendants. On a motion for a preliminary injunction, "[i]f key facts are in dispute, the relief will be denied”. (Faberge Intl. v Di Pino, 109 AD2d 235, 240; see also, First Natl. Bank v Highland Hardwoods, 98 AD2d 924.)
CONCLUSION
Insofar as the instant application is based on a failure to comply with SEQRA, CEQR and ULURP, the court denies the application to enjoin the renovation work, but does hereby enjoin the transfer of any prisoners to the facility until the processes required by the said laws are completed. Should the appropriate agencies render a negative declaration, determin *529 ing that an EIS is not required, such decision, as indicated in Matter of Gerges v Koch (supra) will be reviewable in a separate proceeding.
With respect to the claims of violations of other statutes, on which there are sharply disputed issues of fact, the motion for injunctive relief is denied. However, in light of the claims asserted, the court will grant a prompt trial of this action upon the filing of a note of issue and statement of readiness.