■ In the Matter of CARL L. HOLMES on Behalf of Himself and All Others Similarly Situated, Appellant, v BROOKHAVEN

Town Planning Board et al., Respondents.—In a proceeding pursuant to CPLR article 78 to review a determination of the respondent Planning Board of the Town of Brookhaven (hereinafter the Board), dated October 20, 1986, which approved a site development plan submitted to it by B.W.I. International (hereinafter BWI), the petitioner appeals from a judgment of the Supreme Court, Suffolk County (Abrams, J.), entered February 20, 1987, which dismissed the petition.

Ordered that the judgment is reversed, on the law, without costs or disbursements, the petition is granted, the determination of the Board is annulled, and the matter is remitted to the Board for the preparation of an Environmental Impact Statement (hereinafter EIS) and such further proceedings consistent with the State Environmental Quality Review Act (hereinafter SEQRA) as it deems appropriate.

On or about March 7, 1986, BWI submitted an application for site plan approval to the Board with respect to the proposed construction of a 194,550 square-foot shopping center in an industrially zoned section of Medford which abuts a residential neighborhood. BWI also submitted a long environmental assessment form (hereinafter EAF). Subsequently, the town's Division of Environmental Protection (hereinafter DEP), as lead agency, determined that the proposed project constituted a Type 1 action with a possible significant impact, a designation which made it more likely that the project would require an EIS. In an effort to minimize adverse environmental effects, the DEP requested that the applicant address several areas identified as having a potentially adverse impact upon the environment. However, no EIS was prepared. Thereafter the DEP sought to minimize adverse environmental effects by requesting that BWI incorporate mitigation measures with respect to the number of parking stalls, sewage disposal, traffic control and landscaping in the proposed site plan. In compliance with the DEP's request, BWI subsequently submitted a revised site plan. On July 15, 1986, the DEP issued a negative declaration (a determination that a proposed action would not have a significant effect on the environment) with respect to the revised site plan. On July 28, 1986, a public hearing was held and the Board voted to grant conditional approval of the site plan.

The petitioners then brought a proceeding to set aside the site plan approval. However, that proceeding was settled after the parties stipulated that the public hearing and site plan approval were null and void because the contiguous property owners had not been notified of the hearing. Subsequently, the

applicant submitted another application, duly notified the contiguous property owners and another hearing was held on October 20, 1986. On that same day the Board again voted to approve the site plan for the project.

The petitioner commenced the instant proceeding seeking to set aside the Board's approval of the site plan on the ground, *inter alia,* that the DEP's negative declaration was not issued in accordance with SEQRA.

Special Term held that the Board's negative declaration and subsequent site plan approval were not arbitrary and capricious and dismissed the petition.

The Environmental Conservation Law mandates that an EIS be prepared where there is to be any proposed action that *"may* have a significant effect on the environment" (ECL 8-0109 [2] [emphasis added]). Because the operative word triggering the requirement of an EIS is "may", " 'there is a relatively low threshold for impact statements' " *(H.O.M.E.S. v New York State Urban Dev. Corp.,* 69 AD2d 222, 232). Inasmuch as the DEP, as the lead agency, initially determined that the proposed project constituted a Type 1 action with a possibly significant impact upon the environment, an EIS should have been prepared.

Although the respondents argue on appeal that the EIS process was complied with and thus implicitly concede that an EIS statement was required, it is well established that "literal compliance with both the letter and spirit of SEQRA is required and substantial compliance will not suffice" *(Inland Vale Farm Co. v Stergianopoulos,* 104 AD2d 395, 396, *affd* 65 NY2d 718; *Matter of Rye Town/King Civic Assn. v Town of Rye,* 82 AD2d 474, *appeals dismissed* 55 NY2d 747, *lv dismissed* 56 NY2d 985, *rearg denied* 57 NY2d 775). Moreover, as we have previously stated: "[A]n EIS is meant to be more than a mere disclosure device. Its purpose is, *inter alia,* 'to inform the public and other public agencies as early as possible about proposed actions that may significantly affect the quality of the environment, and to solicit comments which will assist the agency in the decision making process in determining the environmental consequences of the proposed action' (ECL 8-0109 subd 4). The EIS must be 'made available to the public prior to acting on the proposal which is the subject of the environmental impact statement' (ECL 8-0109, subd 6)" *(Matter of Rye Town/King Civic Assn. v Town of Rye, supra,* at 481-482). At bar there is no indication that the DEP took any steps prior to issuing its negative declaration to involve inter-

ested members of the public in the SEQRA process. Thus, even if substantial compliance with SEQRA were acceptable, there was no such compliance here.

Although mindful of the fact that our role in reviewing the respondents' action is supervisory only and that the lead agency need not consider every conceivable impact *(see, Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 418), we also find that the lead agency failed to consider relevant environmental impacts as compared against the criteria listed in 6 NYCRR 617.11. Besides the areas of environmental concern which were identified by the agency, it is obvious that the construction of a 25-acre shopping mall which provides for more than 1,000 parking stalls may have an adverse effect upon air pollution, noise level, drainage and flooding, aesthetics and the existing community *(see,* 6 NYCRR 617.11; *cf., Matter of Town of Henrietta v Department of Envtl. Conservation,* 76 AD2d 215). Nevertheless, the DEP failed to consider these areas of possible adverse impacts, which were identified by local property owners at the public hearing held subsequent to the issuance of the negative declaration. Thus unenlightened by public comment, the DEP failed to take the requisite "hard look" at relevant areas of environmental concern and to make a reasoned elaboration of the basis for its determination *(see, Matter of Jackson v New York State Urban Dev. Corp., supra; Matter of Fernandez v Planning Bd.,* 122 AD2d 139). Accordingly, the matter must be remitted to the respondents for the preparation of an EIS.

We have considered the petitioner's remaining contentions and find them to be without merit. Mangano, J. P., Thompson, Bracken and Spatt, JJ., concur.