In the Matter of WEOK BROADCASTING CORPORATION, Respondent, v PLANNING BOARD OF THE TOWN OF LLOYD, Appellant.

Third Department, April 25, 1991

## APPEARANCES OF COUNSEL

*Di Stasi & Moriello (Thomas P. Halley* of counsel), for appellant.

*Van De Water & Van De Water (David D. Hagstrom* of counsel), for respondent.

*Drayton Grant* for Scenic Hudson, Inc., *amicus curiae.*

## OPINION OF THE COURT

YESAWICH, JR., J.

Petitioner submitted a request to respondent for site plan approval to build an AM radio transmitter facility in Ulster County. The facility, to consist of five radio transmission towers not exceeding 245 feet in height, is a permitted use under the local zoning laws. Nevertheless, respondent, concerned about potential aesthetic impairment, issued a State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA) positive declaration statement which directed petitioner to consider the towers' visual impact from various locations, one of which was a national historic landmark in Dutchess County, the Franklin D. Roosevelt residence.

Petitioner submitted a comprehensive draft environmental impact statement (hereinafter EIS) which included an analysis, prepared by landscape architects, of the proposed towers' visual impact on these sites. This study revealed there would be minor visual impact from six identified viewpoints, moderate visual impact from one, and no visual impact from the remaining two (the Mid-Hudson Bridge and Roosevelt's his-

toric home). Thereafter, respondent retained an independent consultant to critique the draft EIS. This consultant noted that petitioner had "prepared an in depth analysis which utilized a professional and thorough methodology to objectively assess the visual impact of [the proposed] project". She cautioned, however, that "subjective judgments are inextricably involved in any visual assessment".

In the final EIS, petitioner addressed the specific instances of subjectivity identified by the consultant as well as other negative public comments. Respondent disagreed with petitioner's visibility assessment and denied site plan approval. It neglected, however, to articulate any sound aesthetic basis for denying petitioner's application despite having previously approved a single 400-foot-high radio transmission tower located atop a nearby hill; a special permit was required and granted allowing the erection of this much taller, more visible tower which can be seen from the Roosevelt site.

■ This CPLR article 78 proceeding was commenced by petitioner to annul respondent's determination. It is alleged that the decision was arbitrary, not supported by substantial evidence and contrary to respondent's earlier holding. Scenic Hudson, Inc., a nonprofit environmental organization dedicated to the preservation of the Hudson River valley, submitted an *amicus curiae* brief in support of respondent's position. Supreme Court agreed with petitioner and granted the petition. Respondent has appealed. We agree with Supreme Court that the petition should be granted.

A threshold issue is whether SEQRA has any application when the proposed use is one specifically permitted by local zoning ordinances.[1] The question presented is not whether the proposed use comports with local zoning ordinances, in which event the issue should not be resolved by SEQRA analysis *(see,* Gerrard, Ruzow, Weinberg, Environmental Impact Review in New York § 8.14, at 8-55), but, given the proposed use's conformance with local zoning ordinances, whether SEQRA review was still necessary.

■ SEQRA's fundamental policy is to inject environmental considerations directly into governmental decision-making at the earliest possible time so that agencies conduct their affairs

---

1. Respondent argues that petitioner's proposed plan is not a use permitted by the local zoning ordinances because the towers would require lighting *(see,* 1984 Zoning Ordinance of Town of Lloyd § 100-13). For purposes of this argument only, we have assumed a conforming use.

in a manner which will protect the environment *(Matter of Coca-Cola Bottling Co. v Board of Estimate,* 72 NY2d 674, 679; *see,* ECL 8-0103 [8]). To accomplish this goal, all agencies must determine whether those actions they fund, undertake or approve may significantly affect the environment (6 NYCRR 617.1 [c]). With respect to zoning ordinances in particular, the Legislature specifically intended that they be interpreted and administered in accordance with SEQRA's declared policies *(see,* ECL 8-0103 [6]). SEQRA neither preempts nor interferes with local zoning ordinances (ECL 8-0103 [6]; *see, Matter of Town of Poughkeepsie v Flacke,* 84 AD2d 1, 5, *lv denied* 57 NY2d 602); rather, it establishes an analytical process to assure careful, defensible land use decisions (Damsky, *SEQRA and Zoning Law's Requirement of a Comprehensive Plan,* 46 Alb L Rev 1292, 1297 [1982]). Consequently, an agency is not precluded from subjecting an action to SEQRA review simply because the proposed project is specifically permitted by the applicable zoning ordinances *(see, Matter of Jaffee v RCI Corp.,* 119 AD2d 854, 856, *lv denied* 68 NY2d 607).

As in all SEQRA review situations, however, the agency must identify the relevant environmental concerns, analyze them closely and reasonably elaborate the basis for its decision *(Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 417). Court review is limited to ensuring that this three-step process was employed and that the ensuing decision is supported by substantial evidence *(supra).*

It is acknowledged by both parties that respondent denied petitioner's application for aesthetic reasons alone.[2] While petitioner's EISes demonstrated that it minimized negative visual impacts to the greatest extent practical, respondent failed to furnish any rationale for completely disregarding petitioner's comprehensive and extensive visual impact analysis, which its own independent consultant regarded as "comprehensive and thorough" *(see, Society of Plastics Indus. v County of Suffolk,* 154 AD2d 179, 182, *lv granted* 76 NY2d 705). For example, respondent determined that the towers may be visible from the Roosevelt homestead. The draft EIS, however, informed that there was no visual impact, an observation with which respondent's consultant did not disagree. Moreover, the State's Deputy Commissioner of Historic Pres-

---

2. Inasmuch as petitioner accepts respondent's underlying premise that negative aesthetic impacts alone may serve as the basis for a SEQRA denial, we see no need, though urged in the *amicus curiae* brief, to examine the merits of that premise.

ervation opined that "the project will have No Adverse Effect upon [Roosevelt's homestead]".

Similarly, in denying petitioner's application, respondent found that the height of the screening trees was not sufficiently documented, that the impact analysis assumed optimal conditions, that there was no direct financial benefit to be derived from the towers' construction and that the lighting required by the towers would be objectionable.[3] Respondent ignored petitioner's responses to these criticisms, which were specifically addressed in the comment section of the final EIS. As the only apparent grounds for denying petitioner's application consisted of generalized community objections, which are contrary to the data provided, respondent's determination lacks a substantial evidence basis in the record *(see, Matter of Veysey v Zoning Bd. of Appeals,* 154 AD2d 819, 820-821, *lv denied* 75 NY2d 708; *see also, e.g., Matter of Dodson v Planning Bd.,* 163 AD2d 804, 807).* An agency SEQRA decision which, as here, is unsupported by empirical or experimental data, scientific authority, or other explanatory basis is simply unacceptable *(Matter of Tehan v Scrivani,* 97 AD2d 769, 771).* To conclude otherwise is to invest a reviewing agency with unfettered discretion to deny a specifically permitted use because of the emotional objection of irate community members. Adopting such a principle would be improvident; it would quite likely encourage reviewing agencies to develop that certain convenience of vision that community displeasure can inspire and makes further harmonious permitted special land use development virtually impossible.

Our finding that respondent's determination cannot stand makes it unnecessary to confront the parties' remaining argument.

LEVINE, J. (dissenting). In our view, the application of the appropriate standard of judicial review of a lead agency determination under the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA) requires us to uphold the disapproval of this proposed action by respondent and reverse Supreme Court's annulment thereof. At the outset, we would flatly hold that, under the SEQRA statutes, regulations and case law, aesthetic impact is a proper and valid basis for environmental review. SEQRA contains legislative findings

---

**3.** Nonconformance with applicable zoning regulations is not an appropriate basis for SEQRA denial *(cf., Matter of Town of Poughkeepsie v Flacke,* 84 AD2d 1, *supra).*

that "[t]he maintenance of a quality environment for the people of this state that at all times is * * * *pleasing to the senses* * * * now and in the future is a matter of statewide concern" (ECL 8-0103 [1] [emphasis supplied]). "Environment" is statutorily defined as physical conditions to be affected by a proposed action, including "objects of * * * aesthetic signifi- cance * * * and existing community or neighborhood charac- ter" (ECL 8-0105 [6]). The regulations include as one of the criteria indicating that an action will have a significant envi- ronmental effect that it causes "the impairment of the charac- ter or quality of * * * aesthetic resources" (6 NYCRR 617.11 (a) [5]). Decisional authorities also support this conclusion. The court in *Matter of Holmes v Brookhaven Town Planning Bd.* (137 AD2d 601, 604, *lv denied* 72 NY2d 807) directly held that consideration by a lead agency of adverse aesthetic effects is mandatory. The requirement of consideration of aesthetic impact is also implicit in the Court of Appeals' holding that relevant SEQRA concerns include "the impact that a project may have on * * * existing community character, *with or without a separate impact on the physical environment*" (*Chi- nese Staff & Workers Assn. v City of New York,* 68 NY2d 359, 366 [emphasis supplied]).

It seems to us totally beyond dispute that the erection, in a suburban/rural area near a bluff overlooking one of the most scenic vistas of the Hudson River, of five radio transmission towers, each well over 200 feet in height, two of which will be brightly colored and illuminated with blinking red lights from dusk to dawn, will have some adverse aesthetic impact. The majority concludes, however, that respondent failed ade- quately to negate the findings of petitioner's visual impact study that the adverse effect will be insignificant and, there- fore, respondent's disapproval was based purely on "general- ized community objections". The majority holds that such objections were insufficient, as a matter of law, as a basis for respondent's disapproval of this application.

We find a number of flaws in the majority's reasoning. First, we think its deprecation of community objections as a valid factor under SEQRA is erroneous. The case authority cited by the majority in rejecting community objection *(see, e.g., Matter of Dodson v Planning Bd.,* 163 AD2d 804; *Matter of Veysey v Zoning Bd. of Appeals,* 154 AD2d 819, *lv denied* 75 NY2d 708) are zoning decisions having little precedential value for SEQRA purposes. Indeed, SEQRA's procedures emphasize the requirements of advance public notice and hearings to afford

the maximum opportunity for the expression of community environmental concerns on any proposed project *(see,* ECL 8-0109 [4]; 6 NYCRR 617.8 [c]; 617.9 [a]; *Matter of Shawangunk Mountain Envtl. Assn. v Planning Bd.,* 157 AD2d 273, 276; *Matter of Holmes v Brookhaven Town Planning Bd.,* 137 AD2d 601, *supra).* In rejecting community expressions of concern, the majority impliedly would require opponents of this project to submit expert opinions contradicting petitioner's experts. We believe that this is error *(see, Matter of Richland Acres Dev. Corp. v Adirondack Park Agency,* 161 AD2d 1011, 1012).

Additionally, the majority clearly has usurped the functions of the lead agency here in determining the weight to be given to any particular evidence regarding the environmental significance of a proposed action and in balancing environmental, social and economic cost/benefits. These are the responsibilities of the lead agency under SEQRA, and that agency is given wide discretion in resolving such issues *(see, Matter of Town of Henrietta v Department of Envtl. Conservation,* 76 AD2d 215, 222). A lead agency is given considerable latitude in evaluating potential environmental effects, both short and long term *(see, Akpan v Koch,* 75 NY2d 561, 570). A lead agency's decision to disapprove a project may only be annulled if it is irrational, arbitrary and capricious or unsupported by substantial evidence *(Matter of Orchards Assocs. v Planning Bd.,* 114 AD2d 850, 852, *appeal dismissed* 68 NY2d 808).

Respondent's rejection of petitioner's visual impact study was anything but arbitrary and capricious here. Respondent's decision expresses cogent reasons for not giving conclusive weight to the study, reasons which were not overcome by petitioner's responses to comments on the study contained in the final environmental impact statement (hereinafter EIS). First, respondent's consultant quite reasonably pointed out that, irrespective of the degree of professionalism with which petitioner's visual impact study may have been conducted, "subjective judgments are inextricably involved in any visual assessment". Second, the study's findings of only minimal visual exposure values to views of the towers at various sensitive geographic locations were necessarily based on assumptions concerning the continuation of the status quo as to the density and height of trees obscuring the view of the radio towers, and of low population levels at some of the sites. Concerns expressed by respondent and others that these conditions would not remain the same in the long term were certainly not conclusively overcome in the responses contained

in the final EIS. Additionally, although, as the majority points out, the State's Deputy Commissioner of Historic Preservation expressed a lack of concern that the towers would adversely impair the scenic view across the Hudson River from the Franklin D. Roosevelt homestead in Hyde Park, Dutchess County, the superintendent of that landmark for the National Park Service expressed a contrary position and explained the basis for serious doubts as to the assurances of no visual impact over the long term in petitioner's study. Finally, respondent found that petitioner's proposal would afford little, if any, economic benefits to the Town of Lloyd or its residents and it cited various factors supporting that conclusion.

In short, the proposed erection of the five radio towers in petitioner's application undeniably would have some adverse aesthetic environmental impact here. Respondent took a "hard look" at this identified environmental effect and gave a reasonable elaboration of the basis for its determination to reject the only evidence petitioner submitted that the aesthetic impact would be insignificant and that the environmental costs of the proposed project outweighed any possible benefits. Therefore, respondent fulfilled all the procedural and substantive requirements of SEQRA, and the judiciary should not second-guess respondent's decision to disapprove the proposed action *(see, Akpan v Koch, supra; Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 417).

Regarding the effect of the prior approval of a 400-foot radio tower in the Town of Lloyd by respondent, as the Town Supervisor, pointed out in a memorandum supporting approval of that project, the single tower was only part of a larger plan providing for a radio station within the town and the potential creation of new jobs for town residents, plus the donation of 20 acres of "forever green" property to the town and the restriction of further development in the mountain area where the tower was to be located. Thus, on the face of the record, the facts and circumstances of the earlier project were so completely dissimilar to the instant application as to not constitute a prior precedent requiring either approval of petitioner's application by respondent or an explanation of its reasons for reaching a different result *(cf., Matter of Lafayette Stor. & Moving Corp. v Hartnett,* 77 NY2d 823; *Matter of Field Delivery Serv. [Roberts],* 66 NY2d 516). Accordingly, we would

reverse Supreme Court's judgment, confirm respondent's determination and dismiss the petition.

MIKOLL and MERCURE, JJ., concur with YESAWICH, JR., J.; WEISS, J. P., and LEVINE, J., dissent in an opinion by LEVINE, J.

Judgment affirmed, without costs.