OPINION OF THE COURT
Jeanine Ferris Pirro, J.
Petitioner, Town of Bedford (Bedford), has commenced this CPLR article 78 proceeding for a judgment which would declare the determination of respondent, Franklin White, as Commissioner of the New York State Department of Trans *69 portation (DOT), null and void. The challenged determination regards the implementation of the installation of certain traffic signalization at the intersection of Routes 22 and 172 in the Town of Bedford. Bedford claims the determination was arbitrary and capricious on the basis that: (a) DOT failed to conduct mandated studies (see, 17 NYCRR 270.2 [b]; 271.1 [a]); (b) DOT failed to conduct studies of the cumulative impact of the proposed traffic signal on other planned traffic improvements; (c) DOT failed to comply with the State Environmental Quality Review Act (SEQRA) (6 NYCRR part 617 et seqj; (d) DOT violated the Freedom of Information Law (Public Officers Law § 87).
DOT has opposed the requested injunctive relief, asserted that it has complied with legislative mandated studies which must precede the implementation of planned traffic improvements or signals (see, 17 NYCRR part 271) and that the installation of a traffic signal is a Type II action which has been predetermined as not having a significant effect on the environment. A Type II action is either designated by the State regulations or the agency’s own environmental guidelines or regulations (see, 6 NYCRR 617.13; see also, 17 NYCRR 15.12). Type II actions do not require environmental impact statements or any other determination or procedure under the Department of Environmental Conservation (DEC) regulations. In addition to DEC regulations, an agency may adopt its own lists of Type II actions (6 NYCRR 617.4). The regulations adopted by an agency must be no less protective of the environment than the DEC regulations.
For the reasons set forth below, the Town of Bedford’s petition is granted to the extent that (a) DOT is enjoined from the continuation of the implementation and construction of the traffic signal until it has complied with the order of this court; (b) this matter is remitted to the DOT for consideration of the cumulative effects of the proposed action, not only with regard to the other local and area planned traffic improvements, but also with regard to other environmental impacts such as those on the Bedford Village Green and its location within the Bedford Village Historic District (District); and (c) literal and substantive compliance with SEQRA including lead agency procedures, determination whether the proposed action, in view of its impact on a District on the National Historic Register of Historic Places, is a Type I or unlisted action and whether an environmental impact statement (EIS) is required. The determination of the DOT to treat the instal- *70 lotion of a traffic signal as a Type II action and, therefore, exempt from environmental review under SEQRA is, in light of its location in an historic district, irrational, arbitrary and capricious.
This court is satisfied that DOT did intermittently undertake traffic volume studies, accident count, traffic signal checks, traffic count tabulations, accompanying diagrams and charts regarding the proposed implementation of a traffic light at the Route 22 and 172 intersection in the Village and Town of Bedford. Apparently the review of the intersection commenced in 1983 and was completed in 1987. Further, a review of the evidence makes clear that DOT, as early as 1985, made a determination that some change in traffic control at the intersection was necessary. However, the intersection is at an "historic” village green, is located between two heavily travelled routes, and has impact on communities in both the northern and southern parts of Westchester County, access to the north-south routes in the County (such as 1-684), commuters in other States (such as Connecticut) and pedestrians.
Most important, the intersection and the manner in which it is handled affects the quality of life for which many Bedford residents have resisted this particular improvement. Other Bedford residents favor the improvement with the assertion that their safety is being affected by the lack of traffic control. The balance between these competing needs must be accomplished by empirical review but only in the context of a meaningful environmental review. A canned predetermined classification is not always appropriate. In our advanced technological society, the quality of life can only be preserved by careful attention to procedural and substantive environmental safeguards. (Matter of Rye Town/King Civic Assn. v Town of Rye, 82 AD2d 474 [2d Dept 1981].)
The case turns on whether the DOT was required under article 8 of the Environmental Conservation Law, and its implementing regulations, the State Environmental Quality Review Act (6 NYCRR part 617), to make a determination regarding the environmental significance of the project. (See, e.g., Matter of Tri-County Taxpayers Assn. v Town Bd., 55 NY2d 41 [1982].) If the action is Type II, the inquiry terminates and no further environmental review is required by State law. If the action is unlisted or Type I, a determination of the environmental significance of the proposed action is required. This determination of significance would be made by classification of the action, a review of prior SEQRA determi *71 nations involving similar projects, reviewing the environmental criteria set forth in 6 NYCRR 617.11 and the preparation of an environmental assessment form (EAF). Where the action may have a significant affect on the environment, an EIS is required before environmental findings and determination.
The DOT argues that pursuant to 6 NYCRR 617.13 (d) (6), the installation of a traffic control device on an existing street, road and highway is a Type II action and no procedural requirements attach. However, in this court’s view, not every DOT installation is so administrative, routine or ministerial in nature so as to warrant the classification as Type II. In some cases, an elaborate installation may indeed have no effect and be worthy of a legislative or administrative predetermination of nonsignificance. However, in other cases, a simple traffic light could, if not properly reviewed, have global impacts on the level of service of both the intersection to be improved and others.
Indeed, in the case under review, a Type II determination conflicts with the fact that the action occurs wholly or partly within an historic district. Ordinarily, this factor is a significant criteria which could result not only in the determination that the project should be reviewed, but also that it may have a significant effect on the environment and require a full environmental review with the preparation of an EIS. (See, 6 NYCRR 617.12 [9], [12].) There was not even a cursory internal agency review by DOT that the proposed action was seriously considered under SEQRA with regard to the classification as a Type II action. In this regard, the State Department of Environmental Conservation publishes the SEQR Handbook which suggests that such a minimal internal review is prudent (see, SEQR Handbook, at B-7).
This court finds that such a review is mandated in each case where a competing environmental impact is or may be present. 6 NYCRR 617.13 (b) implies a mandatory internal review is required. This section states:
"(b) Each agency may adopt its own Type II list provided that it finds that each of the actions:
"(1) is no less protective of the environment than the actions listed in this section; and
"(2) will, in no case, have a significant effect on the environment based on the criteria contained in section 617.11 of this Part, and any additional criteria contained in its procedures adopted pursuant to section 617.4 of this Part.”
*72 Here the historical significance of the Village Green was well known to DOT. This competing environmental impact required, at the least, an internal agency review (see, e.g., Matter of Board of Visitors — Marcy Psychiatric Ctr. v Coughlin, 60 NY2d 14 [1983]) with regard to emergency exclusions under SEQRA. Indeed, the classification of the action as Type II under 17 NYCRR 15.14 fails because one of the DOT’s own criteria, effect in a district or on a site located on the National Register for Historic Places, precludes this Type II classification. (See, 17 NYCRR 15.14 [d] [6], [37] [ii]; see also, 6 NYCRR 617.11 [a] [5]; 617.12 [b] [9].) In view of the fact that SEQRA entrusts some initial classifications of Type II actions to agencies, it is imperative this trust not be taken lightly and that the reason for the classification be documented. In this regard, it is fundamental that SEQRA requires a review of environmental considerations directly into governmental decision making at the earliest possible time. (Matter of WEOK Broadcasting Corp. v Planning Bd., 165 AD2d 578 [3d Dept 1991].)
It should be noted the April 9, 1992 letter of the Deputy Commissioner for Historic Preservation states that the proposed installation would have no adverse effect on the Bedford Village Historic District. This conclusion is after the fact and based upon a meeting two weeks earlier. This court does not have sufficient evidence to evaluate this conclusion since no supporting information for this agency position has been offered.
An agency’s SEQRA decision which, as here, is unsupported by empirical or experimental data, scientific authority or other explanatory basis, is unacceptable. (Matter of Tehan v Scrivani, 97 AD2d 769 [2d Dept 1983].) Nevertheless, under DOT’s own regulations, the fact that the project is in an historic district alone makes it either a Type I or unlisted action and not Type II. The conclusion of the New York State Office of Parks, Recreation and Historic Preservation does not cure the need for literal compliance with SEQRA.
Finally, this court has also considered the March 27, 1991 decision of Judge Henry Lengyel, Judge of the Court of Claims in Silverbrand v State of New York which did find the State liable for negligence in failing to install a traffic signal at the subject intersection. It may well be that a traffic light or some other method of traffic control is required. Evidence produced by all interested parties and involved agencies will provide the basis for a legal conclusion. Whatever the solution, the entire *73 concept of due process and environmental integrity will not be destroyed or avoided now that DOT, after 10 years of review, has decided to forge a solution.
It should be noted that the DOT could have proceeded for an exemption as a Type II action on the basis of a limited emergency under 6 NYCRR 617.2 (q) (4) but decided not to raise the preservation of life or health exception. This classification would in this court’s opinion also have required at least an internal review by DOT (see, e.g., Matter of Board of Visitors — Marcy Psychiatric Ctr. v Coughlin, 60 NY2d 14 [1983], supra).
The petition is granted to the extent set forth above.