OPINION OF THE COURT
Arthur W. Lonschein, J.
This proceeding concerns a sewer project known as the Surrey Place Sewer Project (the Project) pursuant to which the respondents intend to rip up a section of 179th Street. The intention is to replace the existing sewer lines with sewer lines of greater capacity, in order to alleviate flooding conditions in the Jamaica Estates section. The petitioners object to the Project, assigning as grounds the respondents’ alleged failures to comply with the State Environmental Quality Review Act (SE-QRA; ECL art 8), and the regulations which implement it (6 NYCRR part 617); the New York City Rules of Procedure for Environmental Quality Review (CEQR; 62 RCNY ch 5); and the provisions of New York City Charter § 197-c, known as the Uniform Land Use Review Procedure (ULURP). They seek injunctive relief restraining the continuation of the Project until these alleged failures are remedied.
It is well established that a party seeking a preliminary injunction must establish three things: irreparable injury absent the injunction, a likelihood of success on the merits, and that a balancing of the equities favors granting the injunction (Albini v Solork Assocs., 37 AD2d 835; Grant Co. v Srogi, 52 NY2d 496).
Petitioners’ claims under ULURP may be quickly dismissed, as the replacement of an existing sewer line is not subject to ULURP. City Charter § 197-c provides for the situations which invoke ULURP, none of which encompass laying a sewer line. In Starburst Realty Corp. v City of New York (125 AD2d 148), the Appellate Division, First Department, considered the applicability of ULURP to street openings for the purpose of laying a cable network for a cable television franchise. The Court held, simply, that “[sjtreet openings are not the same as land use and are not subject to ULURP” (125 AD2d 148, 158). No significant difference is apparent between a street opening for television cable and one for a sewer line.
Therefore, it is plain that there are no grounds for delaying the Project under ULURP, and that branch of the petition shall be dismissed.
*781 Petitioners’ more substantial claim is that the respondents have neglected to follow the procedures mandated by the regulations implementing SEQRA (6 NYCRR part 617). As relevant here, the regulations define an “action” as including all “projects or physical activities, such as construction or other activities that may affect the environment by changing the use, appearance or condition of any natural resource or structure” (6 NYCRR 617.2 [b] [1]). An agency “may not commence any physical alteration related to an action until the provisions of SEQR have been complied with” (6 NYCRR 617.3 [a]).
An agency’s initial responsibility when contemplating an “action” is to determine whether it falls within the definitions of “Type I actions”, “Type II actions”, or “unlisted” actions. (6 NYCRR 617.6 [a] [1].)
“Type I actions” are of varied descriptions, which have in common that they are likely to have a significant adverse impact on the environment, and that they therefore require the compilation of an environmental impact statement. The consequence of an “action” falling within Type I, or of its being “Unlisted”, is that an “environmental assessment form” must be compiled (6 NYCRR 617.6), and a determination made as to whether the action “may include the potential for at least one significant adverse environmental impact” (6 NYCRR 617.7 [a] [1]).
“Type II actions” are those which “have been determined not to have a significant impact on the environment or are otherwise precluded from environmental review” (6 NYCRR 617.5 [a]). Once it has been determined that an action falls within Type II, the agency has “no further responsibilities” under the SEQRA regulations (6 NYCRR 617.6 [a] [i]). 6 NYCRR 617.5 specifically provides:
“(c) The following actions are not subject to review under this Part * * *
“(2) replacement, rehabilitation or reconstruction of a structure or facility, in kind, on the same site, including upgrading buildings to meet building or fire codes, unless such action meets or exceeds any of the thresholds in section 617.4 of this Part”.
The petitioners’ principal claim under SEQRA is that the respondents did not make a formal initial determination of action Type, and cannot be permitted to proceed until they do so. The respondents do not contend that a specific determination as to the applicability of SEQRA was made for this particular *782 Project. It is their position that the Project clearly falls within Type II, and is therefore not subject to SEQRA review, in that it is a “replacement, rehabilitation or reconstruction of a structure or facility, in kind, on the same site” (6 NYCRR 617.5 [c] [2]). The respondents offer proof that similar sewer replacement and upgrade projects have routinely been viewed as Type II actions. Petitioners view the respondents’ claim herein, that the Project is clearly within Type II, as belated, after-the-fact, and as made only for the purpose of avoiding environmental review. Significantly, however, petitioners point to none of the definitions of Type I actions in particular as encompassing the Project.
The respondents are clearly correct that this Project is a replacement of a structure or facility, in kind, on the same site. The conclusions must follow that it is a Type II action, and that it is beyond the scope of SEQRA review. That the replacement is not identical to the original sewer system, and is in many respects an improvement, is hardly surprising and does not affect the classification of the action. The legal question is therefore whether a formal declaration of action Type is required before the Project may proceed.
It is now well established that, where SEQRA applies, strict and literal compliance with its terms is required, rather than merely substantial compliance (Matter of Rye Town/King Civic Assn. v Town of Rye, 82 AD2d 474). Contrary to the petitioners’ contentions, however, case law does not compel the conclusion that a formal declaration of action Type is required in cases where, as here, the action is clearly a Type II action and not subject to SEQRA review.
Matter of Town of Bedford v White (204 AD2d 557) involved the placement of a traffic signal within the Bedford Village Green by the State Department of Transportation (DOT), which the Town opposed on environmental grounds. DOT argued that the installation of the signal was a Type II action, immune from environmental review. The trial court, however, found substantial support for a Type I classification in the fact that the action involved an historic district (155 Misc 2d 68). In affirming an injunction against the installation prior to SEQRA review, the Appellate Division, Second Department, agreed that the placement of a traffic signal in an historic district did not fit “squarely” into Type II, as DOT had argued. It was thus in the context of a highly questionable agency classification that the Court stated: “The criteria for what constitutes a Type II action cannot be considered in a vacuum” (204 AD2d 557, 559).
*783 In Matter of London v Art Commn. (190 AD2d 557), the Court considered an agency proposal to dismantle a landmark structure, the Naumberg Bandshell in Central Park, without having undertaken a formal determination as to whether the action was of Type I or Type II. Here, also, the Court “declined” to accept the agency conclusion without such a formal review. The Court did not, as petitioners would have it, rule as a blanket measure that such a formal review is required in each instance. Matter of Golten Mar. Co. v New York State Dept. of Envtl. Conservation (193 AD2d 742), also relied on by the petitioners, involved the construction of a waste management facility, which was clearly subject to environmental review. The issue was the sufficiency of the environmental impact statement, and not a determination of action Type. The case is therefore wholly inapplicable to these facts. Similarly inapplicable are Matter of E.F.S. Ventures Corp. v Foster (71 NY2d 359), which involved a private development project, and where the issue was whether there could be an estoppel against the Town of East Hampton due to the failure of earlier Town officials to insist on an environmental impact statement, and Inland Vale Farm Co. v Stergianopoulos (104 AD2d 395, affd on opn below 65 NY2d 718), which also dealt with a project subject to SEQRA.
Here, there is no substantial doubt that the Project is a Type II action, not subject to SEQRA review. In such a case, the court does not believe that SEQRA imposes a requirement that a formal declaration of action Type is required, and the relevant appellate decisions do not require such a holding. Therefore, the court does not find that the petitioners have established a likelihood of success on the merits, and are not entitled to injunctive relief.
Petitioners have made certain factual claims, which address the question of irreparable harm, and which should be briefly addressed. Petitioners claim that the Project unfairly burdens their neighborhood, while the benefits fall elsewhere. This is not so, for the simple reason that the water which floods the low-lying section of Jamaica Estates comes from higher elevations such as the petitioners’ area. Petitioners’ claims as to possible settling of their homes cannot be ruled out on the affidavits presented. These claims, however, which might be considered on the issue of irreparable harm, do not establish a violation of SEQRA, CEQR, or ULURP, and are not sufficient *784 cause to justify an injunction in the absence of a likelihood of success on the merits.
The petition is accordingly dismissed.