■ In the Matter of TIMOTHY TEHAN et al., Appellants, v EDWARD SCRIVANI et al., Respondents. — In a proceeding pursuant to CPLR article 78 to review a determination of the Planning Board of the Town of Patterson dated April 29, 1982, which after a declaration of environmental nonsignificance, approved respondents Ronald H. Schmidt's and Leontine C. Schmidt's final subdivision plat, petitioners appeal from a judgment of the Supreme Court, Putnam County (Hickman, J.), entered July 8, 1982, which dismissed the proceeding on the merits. Judgment reversed, on the law, without costs or disbursements, petition granted to the extent that the determination dated April 29, 1982 is annulled, and the matter is remitted to the Planning Board of the Town of Patterson for a new determination in accordance herewith. Respondents Ronald H. Schmidt and Leontine C. Schmidt own a parcel of approximately 54 acres of land bounded on the west by Farm to Market Road (a county highway) and on the north by Big Elm Tree Road in the Town of Patterson. On April 8, 1982, they filed an application for approval of a "final subdivision plat" with the town planning board. The plat proposed a residential subdivision comprised of four lots: lot number one (1.37 acres) and lot number two (1.52 acres) would front on Farm to Market Road, lot number three (5.1 acres) would front on Big Elm Tree Road, and lot number four (46 acres) would remain undeveloped for the present time. Petitioners' parcel of developed property, located on the westerly side of Farm to Market Road, is across the county road from the proposed development of lots numbers one and two. In the past, petitioners' property has been flooded during and after rainstorms. A 24-inch diameter culvert collects storm water runoff from a roadside ditch on the east side of Farm to Market Road and conveys it under said road to the west side, where it is discharged onto petitioners' property. Due to the contour of the land, which slopes steeply downhill in an east to west direction, a portion of the storm water originates from runoff from the acres comprising the Schmidts' lots numbers one and two. The flooding problems experienced by petitioners in the

past were substantially alleviated by a drainage system, which petitioners installed on their property, and a second culvert was installed which discharged storm water to a brook located on the north side of Big Elm Tree Road. Petitioners submitted an engineer's report to the planning board, wherein the engineer concluded that petitioners had a legitimate environmental concern regarding the flooding of their property due to the anticipated increase in storm water runoff from the proposed development of subdivision lots numbers one and two. His conclusion was based on the inadequacy of the existing drainage facilities to cope with the additional storm water runoff resulting from the amount of wooded area converted to roof, driveway and lawn area, the fact no new drainage facilities were proposed on either the preliminary or final subdivision plat, other than the location of a " 'drainage ditch' along Farm to Market Road", the fact that the predominate soil on both lots (Paxton soil) has a high runoff potential, and the proposed driveway location for lot number one. The engineer recommended that this matter be addressed by the developer of the Schmidt property, various regulatory agencies of the Town of Patterson and the Putnam County Highway Department before final approval was granted for the proposed subdivision of the Schmidts' property. Petitioners' engineer additionally identified two other legitimate environmental concerns which should have been addressed before final approval was granted: "(1) soil erosion and the resulting sedimentation of a brook and pond located on petitioners' property due to the high erodibility of Paxton subsoils during construction: and (2) pollution of petitioners' well and pond from any failure of a subsurface sewage disposal facility resulting from the existing soil's 'severe limitations' with respect to the satisfactory operation of septic tank fields." At a public hearing conducted on April 29, 1982, the planning board denied petitioners' attorney's request for the completion of an environmental impact statement or an environmental assessment form prior to granting approval to the final subdivision plat. The board determined that the proposed subdivision will not have a significant effect on the environment and passed a resolution granting respondent Schmidts' application for approval of the final subdivision plat. From a reading of the record on appeal, we are of the opinion that the planning board issued a declaration of environmental nonsignificance based on the erroneous premise the instant subdivision plat, which constitutes a "minor subdivision" under section 2.11 of the Patterson Land Subdivision Regulations, could not have a significant effect on the environment. With the exception of erosion, the planning board did not adequately review the flooding and sewage disposal concerns identified by petitioners, claiming jurisdiction over such matters rested, respectively, with the Putnam County Highway Department and the board of health. Under the State Environmental Quality Review Act (SEQRA) (ECL 8-0101 *et seq.*) there exists a relatively low threshold to trigger the preparation of an environmental impact statement (EIS). Such a statement is required for any action "which may have a significant effect on the environment" (ECL 8-0109, subd 2). Before an agency may dispense with the requirement of an EIS, it must identify the relevant areas of environmental concern, take a "hard look" at them, and make a reasoned elaboration of the basis for its declaration of environmental nonsignificance (see *H.O.M.E.S. v New York State Urban Dev. Corp.*, 69 AD2d 222, 232, quoting from *Klappe v Sierra Club*, 427 US 390, 410, n 21). Respondent Schmidts' application for final subdivision plat approval is an "unlisted action" (6 NYCRR 617.2 [aa]). When an agency is reviewing an unlisted action, as in this case, it is directed under the regulations (6 NYCRR 617.11 [a]) to compare "the impacts which may be reasonably expected to result from the proposed action" with the several criteria listed in 6 NYCRR 617.11 (a) (1)-(11). Each of these criteria is descriptive of a different category of consequence, change, or

effect which (if reasonably expected to result from the proposed action) is deemed to be an indication that the proposed action may have a significant effect on the environment (*Matter of Niagara Recycling v Town Bd. of Town of Niagara,* 83 AD2d 335, 339). One of these criteria is "a substantial increase in potential for erosion, flooding or drainage problems" (see 6 NYCRR 617.11 [a] ■). An environmental assessment form (EAF) furnishes an agency with a description of the proposed action, its location, its purpose and its potential impacts on the environment (see 6 NYCRR 617.19 [a]) to assist it in performing its delegated task. Additionally, a simplified EAF, known as a "short form EAF" is also available to enable an agency to ascertain whether it has sufficient information on which to render a determination of environmental significance or nonsignificance (6 NYCRR 617.2 [k]; 617.19 [b]). Because the proposed subdivision is an unlisted action, the simplified procedural requirements set forth in 6 NYCRR 617.7 applied (see 6 NYCRR 617.2 [aa]; 617.5 [c] ■). Consequently, the completion of an EAF was optional and co-ordinated review and notification to sister agencies were also optional, unless the planning board determined that an EIS was to be prepared (6 NYCRR 617.7 [a] [1]). Although completion of an EAF is not required in connection with every unlisted action (6 NYCRR 617.7 [b]), we conclude that, under the circumstances in this case, the planning board could not have performed its duty to take a "hard look" at the legitimate environmental concerns raised by petitioners' engineer and to provide a reasoned elaboration for its determination, absent the completion of the short-form EAF (cf. *Matter of Town of Yorktown v New York State Dept. of Mental Hygiene,* 92 AD2d 897). If, after considering the completed short-form EAF (see 6 NYCRR 617.19 [b]), the planning board has not obtained sufficient information to render a reasoned analysis and determination of the environmental significance of the proposed subdivision, it shall use a standard form EAF (see 6 NYCRR 617.19 [a]), to elicit the information it needs to determine the environmental significance of the unlisted action (see 6 NYCRR 617.19 [b]). The planning board is forewarned that a conclusory statement, unsupported by empirical or experimental data, scientific authorities or any explanatory information will not suffice as a reasoned elaboration for its determination of environmental significance or nonsignificance. In view of the fact petitioners identified legitimate environmental concerns which respondents claim are not within the scope of the planning board's jurisdiction, it would be advisable for the planning board to take advantage of the optional provisions for notification to sister agencies and co-ordinated review (see 6 NYCRR 617.4 [c], [d]). We further note that the planning board failed to comply with 6 NYCRR 617.7 (c), which provides that "within 15 days of receipt of an application for * * * approval of an unlisted action, an agency shall make an initial determination of the significance of the action in accordance with the sections 617.11, 617.12, and 617.13 of this Part". When 6 NYCRR 617.7 (c) is read in conjunction with 6 NYCRR 617.10 (b), which states that "[a]gencies shall maintain files of the written analyses and findings leading to their determination on *all* actions *subject* to SEQR" (emphasis supplied), we construe said regulations to require an agency reviewing an unlisted action to prepare a *written* determination of nonsignificance within the 15-day period unless the delay is excusable. In our view, the substance of SEQRA cannot be achieved without adhering to its procedural framework. Consequently, literal, not substantial, compliance with SEQRA and its implementing regulations has been mandated (*Matter of Rye Town/ King Civic Assn. v Town of Rye,* 82 AD2d 474, app dsmd 55 NY2d 747; *Matter of Schenectady Chems. v Flacke,* 83 AD2d 460). However, the regulations authorize some flexibility with respect to time periods for the preparations and review of SEQRA materials (see 6 NYCRR 617.4 [b]). Therefore, a failure to

comply with the 15-day time period prescribed in 6 NYCRR 617.7 (c) might be countenanced where the delay was for a reasonable period and due to the agency's acquisition or review of SEQRA materials (such as an EAF) or any additional information it deemed necessary to render an initial determination of environmental significance or nonsignificance. Such a delay would not undermine the purposes of SEQRA since it would protect environmental values by promoting accuracy with respect to the initial determination. A review of the record on this appeal does not set forth any facts which would serve to excuse the planning board's deviation from the time provisions set forth in 6 NYCRR 617.7 (c) for rendering a written determination of environmental nonsignificance. Mollen, P. J., Lazer, Weinstein and Rubin, JJ., concur.