■ In the Matter of Rocco Di Veronica, Appellant, v Joel Arsenault et al., Constituting the Planning Board of the Town of Lenox, Respondents.—Yesawich, Jr.,

Real estate developer Cass E. Mulford, seeking approval of a plan to construct a residential townhouse development comprising 40 residential units, submitted a site plan to the Town of Lenox Planning Board for its review. The land involved a 6.5-acre tract and is zoned RC, which under the town's Zoning Law allows for the construction of multifamily dwellings. The site plan, an architectural rendering of the layout of the proposed construction, was considered and unanimously approved by the Board subject to certain conditions.

Petitioner, the owner in fee of premises adjoining the project, and which he maintains will be adversely affected by the proposed construction, commenced this CPLR article 78 proceeding challenging the procedure employed by the Board in approving the site plan. Citing, among other things, reports of the agricultural soil conservation service which indicate his property had been damaged by flooding at least five times in the past, petitioner charges development of the proposed townhouse site would exacerbate drainage and flooding problems on his property. Petitioner's primary concern is that increased runoff from the development would swell the volume of water in a creek coursing through his property and cause flooding. When his petition to annul the Board's decision was dismissed, petitioner appealed.

The gravamen of petitioner's complaint is that the Board allegedly failed to comply with the applicable environmental protection laws; more specifically, that an environmental im-

pact statement (hereinafter EIS) should have been filed regarding the proposed construction or, at a minimum, the Board should have made a specific finding regarding the need for an EIS. We agree with the latter assertion.

The Environmental Conservation Law (ECL) and State Environmental Quality Review Act (SEQRA) were enacted to assure that agencies whose "actions" affected the quality of the environment gave "due consideration * * * to preventing environmental damage" by requiring review of legislatively identified areas of environmental concern (ECL 8-0103 [9]; *see,* 6 NYCRR 617.11 [a]). Given the comprehensive nature of this statutory framework, a relatively low threshold exists to trigger its application *(Matter of Tehan v Scrivani,* 97 AD2d 769, 770).

"Actions" (whose statutory definition include agency proceedings such as these [6 NYCRR 617.2 (b) (iii)]), are grouped into three distinct categories, Type I, Type II and Unlisted (6 NYCRR 617.2 [z], [aa], [ab]). We deem the proposed action, which neither qualifies for Type I status (6 NYCRR 617.12 [a]) nor is urged by either party to be a Type II action *(see,* 6 NYCRR 617.13), to be an unlisted action (6 NYCRR 617.12 [a]). As such, there is no presumption that it demands an EIS *(see,* Weinberg, Practice Commentaries, McKinney's Cons Laws of NY, Book 17½, ECL C8-0109:3, p 76). To make that determination, an agency reviewing an unlisted action must compare "the impacts which may be reasonably expected to result from the proposed action" with the 11 environmental concerns set out in 6 NYCRR 617.11 (a) *(Matter of Tehan v Scrivani, supra),* one of which is whether the proposed action will cause a "substantial increase in potential for erosion, flooding or drainage problems" (6 NYCRR 617.11 [a] [1]).

If the agency finds the proposed action will impinge significantly on the environment, an EIS must be prepared. Should the agency determine the proposed action will not have a significant effect on the environment, then its finding should be contained in a written determination of nonsignificance *(Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay,* 88 AD2d 484, 491, 492). In discharging this responsibility the agency is required to take a " 'hard look' " at the relevant areas of environmental concern and make a reasoned elaboration of the basis of its determination *(H.O.M.E.S. v New York State Urban Dev. Corp.,* 69 AD2d 222, 232, quoting *Kleppe v Sierra Club,* 427 US 390, 410, n 21).

Here the Board did not meet this standard. Although SEQRA mandates "literal compliance with both the letter and

spirit" of the law *(Inland Vale Farm Co. v Stergianopoulos, 104 AD2d 395, 396, affd 65 NY2d 718)*, there is no reference to the environmental statutes or the 11 enumerated considerations in the minutes of the Board meeting at which site approval was granted.

Nor is the Board aided by a nonsignificance determination issued by the Department of Environmental Conservation after the Board had acted. This evaluation addressed but one issue—sewage. Moreover, compliance with SEQRA must occur before the agency acts; after-the-fact compliance is of no avail *(Matter of City of Glens Falls v Board of Educ., 88 AD2d 233, 237)*.

Furthermore, on submitting the site plan to the Board, Mulford referred to the proposed development as "Phase I", suggesting a "phase development" scheme, the environmental impact of which should be weighed by the Board *(see, Matter of Sutton v Board of Trustees, 122 AD2d 506)*.

Inasmuch as the Board in arriving at its decision to approve Mulford's proposed construction did not take into account the appropriate environmental considerations, and strict compliance with SEQRA is required, we are constrained to conclude that its determination was arbitrary and capricious and must be annulled and the matter remitted for further consideration not inconsistent herewith.

Petitioner's other arguments lack substance. Those not plainly specious, or foreclosed because they have been raised for the first time on appeal *(see, Wagner v Town of Ticonderoga, 88 AD2d 1011)*, are unconvincing, based as they are on: a misperception of the distinction between a "site plan" (the Mulford project contemplated rental units) and a subdivision "plat" *(see, 2 Rathkopf, Law of Zoning and Planning § 30.04 [1], at 30-13—30-14 [4th ed])*; a failure to recognize that the Board is expressly authorized to waive disclosure of certain site plan information and that a presumption of correctness attaches to its decisions; and a misreading of the town's Zoning Law so as to proscribe community sewers.

The record is insufficiently developed to enable us to determine if the proposed project will have a significant effect on the environment so as to require the preparation of an EIS (6 NYCRR 617.7 [a] [1]); for one thing evidence bearing on petitioner's principal environmental concern, the possibility of increased flooding is contradictory. Accordingly, the Board is directed to prepare a short-form environmental assessment form and to not only take a "hard look" at the relevant

environmental considerations, but a meaningful one, such that the Board's determination cannot be said to be merely a "conclusory statement, unsupported by empirical or experimental data, scientific authorities or any explanatory information" *(Matter of Tehan v Scrivani, supra,* p 771).

Judgment reversed, on the law, without costs, petition granted, determination annulled and matter remitted to the Town of Lenox Planning Board for further proceedings not inconsistent herewith. Mahoney, P. J., Weiss, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.