4

In the Matter of DESMOND-AMERICANA et al., Respondents-Appellants, v THOMAS C. JORLING, as Commissioner of the Department of Environmental Conservation of the State of New York, et al., Appellants-Respondents. (And Four Other Related Actions or Proceedings.)

Third Department, December 21, 1989

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Joan Leary Matthews* of counsel), for appellants-respondents.

*McNamee, Lochner, Titus & Williams, P. C. (Francis J. Smith, Jr.,* of counsel), for Desmond-Americana and others, respondents-appellants.

*Hiscock & Barclay (Richard L. Weisz* of counsel), for New York State Pest Control Association and others, respondents-appellants.

*Gleason, Dunn, Walsh & O'Shea (Mark T. Walsh* of counsel), for Professional Certified Applicators of Long Island, Inc. and others, respondents-appellants.

*Nixon, Hargrave, Devans & Doyle (Thomas S. West* of counsel), for New York Farm Bureau, Inc. and others, respondents-appellants.

*LeBoeuf, Lamb, Leiby & MacRae (G. S. Peter Bergen* of counsel), for New York State Electric and Gas Corporation and others, respondents-appellants.

*Berle, Kass & Case (Florence A. Fredman* of counsel), for Consumers Union of the United States, Inc. and others, *amici curiae.*

## OPINION OF THE COURT

HARVEY, J.

In these five CPLR article 78 proceedings and/or declaratory judgment actions, the various plaintiffs or petitioners (hereinafter collectively referred to as petitioners) seek to set aside a series of amendments to 6 NYCRR part 325 promul-

gated by defendant/respondent Commissioner of Environmental Conservation (hereinafter the Commissioner) that would require multiple forms of notification devices to be given to the public concerning the application of pesticides. The authority cited by the Commissioner to promulgate these regulations was the legislative directive concerning the application of pesticides contained in ECL 33-0905 (5) and ECL article 33, title 10 (see, ECL 33-1005). The five groups of parties challenging these regulations on various grounds are affected in diverse ways by the promulgation of these regulations.

■ Recognizing certain common questions of law and fact in all of these lawsuits, Supreme Court disposed of the cases together although they were not formally joined or consolidated. By initial decision dated May 11, 1989, Supreme Court apparently determined, among other things, that all of the challenged regulations should be annulled on the ground that the Commissioner exceeded his authority in promulgating these regulations. This ruling was clarified in an amended decision dated June 13, 1989, stating that the court's intention was to only strike down 6 NYCRR 325.28, 325.45 and 325.3 (except 325.3 [g]). Both petitioners and defendants/respondents (hereinafter respondents) now cross-appeal from the five orders and judgments entered on both of these decisions.[1]

■ At the outset, this court must address itself to the various procedural or threshold issues raised by the parties. The first, which was considered and rejected by Supreme Court, is the argument that respondent Department of Environmental Conservation (hereinafter DEC) failed to file the regulations at issue within the time limit established by the State Administrative Procedure Act. If so, the regulations are without legal effect. In our view, Supreme Court erred in its rejection of this contention.

The State Administrative Procedure Act requires administrative agencies to file a notice of proposed rule making with

---

1. ■ Contrary to the claim of certain petitioners, the procedure utilized by Supreme Court in amending its initial decision was proper in all respects and did not transform the order settlement process into a motion for reargument. Certain alleged inconsistencies in the court's decision were brought to the court's attention. Before signing any proposed orders and judgments, the court issued an amended decision. The whole process, as required in the initial decision, was done on notice to all parties. The ensuing orders and judgments, dated nine days after the amended decision, specifically state that they are based on both of the court's decisions and, therefore, there is no conflict apparent.

the Secretary of State (State Administrative Procedure Act § 202 [1]). Once the required notice is given and when public hearings are required, the agency has 180 days from the date of the last scheduled public hearing to adopt the rule by filing with the Secretary of State (State Administrative Procedure Act § 202 [2] [a] [ii]). If the agency fails to adopt the rule within the 180 days the "notice of proposed rule making *shall expire and be ineffective*" (State Administrative Procedure Act § 202 [2] [a] [emphasis supplied]) unless the agency, prior to the expiration date, files a notice of continuation (State Administration Procedure Act § 202 [3] [a]). The "notice of continuation shall extend the expiration date of a notice of proposed rule making for an additional [90] days. No notice of proposed rule making may be continued more than twice" (§ 202 [3] [a]).

Here, it is undisputed that the notice of proposed rule making, published in the September 23, 1987 State Register, identified November 9, 1987 as the date of the last public hearing. Since DEC gave notice of the two permitted continuation periods of 90 days each, DEC had an additional 180 days, or a total of 360 days from November 9, 1987, in which to adopt the proposed regulations and file the notice of adoption with the Secretary of State. Petitioners calculate that the 360-day period expired on November 3, 1988. Since DEC did not file the notice of adoption until November 4, 1988, it is their contention that the original notice of proposed rule making expired and became ineffective *(see,* State Administrative Procedure Act § 202 [2] [a]). Respondents assert, however, that since the initial 180-day period expired on Saturday, May 7, 1988, the expiration date was extended to Monday, May 9, 1988 pursuant to the weekend rule of General Construction Law § 25-a. Using Monday, May 9, 1988 as the new expiration date of the initial 180-day period, respondents argue that August 8, 1988 was the expiration date of the first notice of continuation. When DEC again elected to continue the notice of proposed rule making, the expiration date was thus extended under its calculation to Saturday, November 5, 1988, which would then be extended to Monday, November 7, 1988 pursuant to the application of General Construction Law § 25-a.

Under the circumstances presented, however, General Construction Law § 25-a is inapplicable. The statute provides, in relevant part, that: "When any period of time, computed from a certain day, within which or after which or before which *an*

*act* is authorized or required to be done, ends on a Saturday, Sunday or a public holiday, *such act may be done* on the next succeeding business day" (General Construction Law § 25-a [1] [emphasis supplied]). By its specific language, General Construction Law § 25-a only permits the doing of an act on a Monday when the act was otherwise *required* to be done on a Saturday or Sunday. In the present case, the notice of adoption was required to be filed by Saturday, May 7, 1988, the 180th day. DEC could have waited until Monday, May 9, 1988 had it chosen to file the notice of *adoption.* However, the notice of *continuation* was required to be filed *prior to* May 7, 1988, not on May 9, 1988. Therefore, while General Construction Law § 25-a extends the time in which to perform an act, it does *not* change the calculation of the 360 days in this case.

Our conclusion on this point is not altered by the fact that the Department of State, as a matter of long-standing practice, has applied General Construction Law § 25-a so that when the 180th day falls on a Saturday, Sunday or legal holiday, the obligation scheduled for such day would in fact take legal effect on the next succeeding business day. While the date to perform an act might be moved to the Monday pursuant to the statute, this does not change the *calculation* of the time period such that Saturday and Sunday would be excluded. In addition, a practice of the Department of State does not mean that, as a matter of law, its interpretation is correct *(see, Matter of Industrial Liaison Comm. v Williams,* 72 NY2d 137, 144).

Nor are we persuaded by respondents' argument that, even if the filing was one day late, it was in substantial compliance with the procedures of the State Administrative Procedure Act and was therefore acceptable.[2] Respondents' reliance on the language of State Administrative Procedure Act § 202 (8) is misplaced. Read in conjunction with State Administrative Procedure Act § 202 (9) (iii), it is clear that the substantial compliance standard specifically relates to the form of notices *(see, Matter of Industrial Liaison Comm. v Williams, supra)* and not to time periods. The latter must be mandatory or it would defeat the point of publishing a specific date in the State Register and would create the confusion over

---

2. Although respondents argue this point in their brief, at oral argument their counsel stated that time requirements should be strictly construed. This admission is consistent with the position that the Attorney-General has taken in the past even though that position has often brought about most unfortunate results to those challenging administrative action.

time periods which the Legislature sought to avoid in enacting the statute *(see,* sponsor's mem, 1982 NY Legis Ann, at 48). As mentioned previously, State Administrative Procedure Act § 202 (2) (a) specifically provides that if an agency does not adopt a rule within 180 days, the notice of proposed rule making "shall expire" as long as an extension is not obtained. This language is clearly mandatory *(see, Matter of 400 Del. Ave. Prop. Co. v State of New York Div. of Hous. & Community Renewal,* 105 AD2d 1046, 1046-1047; *see also, Matter of King v Carey,* 57 NY2d 505, 513). We are not permitted to apply a lesser standard than that enunciated in State Administrative Procedure Act § 202 (2) (a). Accordingly, it is our decision that the rules challenged herein are ineffective because of DEC's noncompliance with the mandatory time periods of the State Administrative Procedure Act.

■ Next, we consider the claims by certain petitioners that DEC violated ECL article 8, the State Environmental Quality Review Act (hereinafter SEQRA), by failing to prepare an environmental impact statement (hereinafter EIS) in connection with its proposed regulations. As the lead agency with respect to the instant regulations,[3] DEC was required to make an initial determination of whether the regulations "may have a significant effect on the environment" (ECL 8-0109 [2]) and, if so, to prepare an EIS. The use of the word "may" in ECL 8-0109 (2) has been interpreted as meaning that only a very low threshold is needed to trigger the preparation of an EIS *(Matter of Holmes v Brookhaven Town Planning Bd.,* 137 AD2d 601, 603, *lv denied* 72 NY2d 807; *Oak Beach Inn Corp. v Harris,* 108 AD2d 796, 797). Before the EIS requirement can be dispensed with, the agency "must identify the relevant areas of environmental concern, take a 'hard look' at them, and make a reasoned elaboration of the basis for its declaration of environmental nonsignificance" *(Matter of Tehan v Scrivani,* 97 AD2d 769, 770; *see also, Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359, 364; *Matter of Di Veronica v Arsenault,* 124 AD2d 442, 443; *H.O.M.E.S. v New York State Urban Dev. Corp.,* 69 AD2d 222, 232). Only after an agency thoroughly investigates the problems involved and reasonably concludes that the proposed action "will not result in any significant environmental effects" can a negative declaration be properly prepared and filed (6 NYCRR 617.2 [y]; *see, H.O.M.E.S. v New York State Urban Dev. Corp., supra,* at 231).

---

■ **3.** The promulgation of these regulations is an "unlisted action" (6 NYCRR 617.2 [kk]) which *may* require the filing of an EIS.

■ In the case at bar, DEC issued negative declarations on September 8, 1987 and again on July 1, 1988, stating that the pesticide notification regulations would not have a significant effect on the environment and, therefore, no EIS was required. The second negative declaration came after 11 public hearings were held throughout the State regarding the proposed regulations and extensive comment was submitted. Petitioners argue, however, that although DEC was repeatedly informed that the proposed regulations would have an adverse environmental effect on the very successful integrated pest management (hereinafter IPM) program,[4] DEC failed to fully and adequately explore the impact through the EIS process. We agree with this assessment.

While it is true that DEC may have *considered* the IPM program in promulgating the regulations, the evidence in the record decisively demonstrates that the regulations would have a major adverse impact on the IPM program, that DEC knew of this evidence and that, therefore, an EIS was required to explore the entire issue thoroughly. Specifically, there is evidence that petitioner New York Farm Bureau, Inc. notified DEC in December 1986 and January 1987 of the potentially adverse effect on the IPM program. Nonetheless, the first negative declaration was issued on September 8, 1987 despite the very low threshold needed to trigger the preparation of an EIS. Following the first negative declaration, public hearings were held at which more concerns over the adverse impacts to the IPM program were expressed and extensive and consistent comments supporting these concerns by experts were documented. Despite these opinions, DEC issued the second negative declaration on July 1, 1988 wherein it refers to the IPM program in a most conclusory fashion.

This cursory examination was clearly insufficient and was arbitrary under the circumstances. As the lead agency, DEC had a statutory obligation to meet the requirements of SEQRA and to perform a thorough and meaningful review

---

4. The IPM program (Agriculture and Markets Law art 11) was designed in part to promote small-scale highly targeted pesticide applications which would lead to a reduction in pesticide use and residue (L 1985, ch 390, § 1). It has been developed as a technique for reducing the dependence upon pesticide use in the production of agricultural commodities and the management of agricultural and horticultural resources. The success of the IPM program is based on the careful timing of pesticide applications, which experts opined would be threatened by the notification provisions of the regulations.

and analysis of any potential environmental impacts whenever there *may* be an impact on the environment *(see,* ECL 8-0109 [2]). We are not dissuaded from this view by the fact that DEC apparently took the IPM comments into consideration by making certain alterations to its proposals in deference to the program. Having recognized an area of significant concern, it was DEC's duty to address these concerns thoroughly by way of an EIS. The EIS would have then allowed DEC to "intelligently * * * assess and weigh the environmental factors, along with social, economic and other relevant considerations in determining whether or not a project or activity should be approved or undertaken in the best over-all interest of the people of the State" *(Matter of Town of Henrietta v Department of Envtl. Conservation,* 76 AD2d 215, 222). Since literal compliance with SEQRA is required *(Matter of Holmes v Brookhaven Town Planning Bd.,* 137 AD2d 601, 603, *supra),* the challenged regulations must be annulled.

The remaining threshold issues raised by petitioners have been examined and have been found to be either unfounded or not properly before us. Regarding the merits of petitioners' various challenges to the regulations, we find it unnecessary to reach them due to our resolution of the discussed issues.

CASEY, J. P., WEISS, MIKOLL and YESAWICH, JR., JJ., concur.

Orders and judgments modified, on the law, without costs, by annulling all amendments to 6 NYCRR part 325 filed with the Secretary of State on November 4, 1988 and declaring them invalid, and, as so modified, affirmed.