

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-27-2000

# Guardian Life Ins Co v. Goduti-Moore

Precedential or Non-Precedential:

Docket 99-5165

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Guardian Life Ins Co v. Goduti-Moore" (2000). *2000 Decisions.* Paper 207.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/207

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 27, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 99-5165

GUARDIAN LIFE INSURANCE COMPANY OF AMERICA
        Appellee

v.

DONNA M. GODUTI-MOORE, individually and as

Executrix of the Estate of Kevin H. Moore
        Defendant/Third-Party
        Plaintiff

v.

ROBERT BECKETT, GUARDIAN AGENCY,

NATIONAL PENSION CONSULTANTS,

Donna M. Goduti-Moore, individually and as Executrix
to the Estate of Kevin H. Moore,
        Appellant

On Appeal from the United States District Court

for the District of New Jersey, Trenton
AT NO. 97-1418 (MLC)

District Judge: Honorable Mary L. Cooper

Argued March 8, 2000

BEFORE: ALITO and STAPLETON, Circuit Judges and
POLLAK,* District Judge

(Filed: September 27, 2000)
_____

* Honorable Louis H. Pollak, United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

Steven P. Del Mauro, Esq.
Robert P. Lesko, Esq. (Argued)
Del Mauro, Digiamo & Knepper
8 Headquarters Plaza
North Tower
Morristown, NJ 07960

 Counsel for Appellee
Guardian Life Insurance Company
of America

Donald R. Belsole (Argued)
Belsole & Kurnos
3 Prospect Street
Morristown, NJ 07960

 Counsel for Appellant

OPINION OF THE COURT

POLLAK, District Judge:

This appeal concerns a $500,000 life insurance contract ("the policy") between appellee, The Guardian Life Insurance Company of America ("Guardian"), and Kevin H. Moore, the deceased husband of appellant, Donna M. Goduti-Moore. Guardian, a New York corporation, brought this diversity action against Ms. Goduti-Moore, a citizen of New Jersey, in New Jersey's federal district court seeking a declaratory judgment respecting the parties' rights and obligations under the policy. In particular, Guardian sought to determine whether the policy had lapsed on the day before Mr. Moore's death. The District Court granted Guardian's motion for summary judgment, holding that the policy had so lapsed, and we review that determination de novo.

Facts

The policy was signed by Guardian and Mr. Moore on October 4, 1994, with Ms. Goduti-Moore as its primary beneficiary. The policy's basic terms specified, inter alia: that premiums could be paid either yearly or by some mutually-accepted fraction of a year, that such payments

2

had to be made prior to the applicable coverage period, and that each payment's "due date" would be followed by a thirty-one-day "grace period." As discussed infra, this appeal essentially turns on how the policy's due date and grace period provisions should be interpreted and applied.

When the policy was issued and delivered, Mr. Moore and Guardian agreed to change the frequency of payment from an annual schedule to a monthly one, and Mr. Moore opted for a "Guard-o-Matic Premium Arrangement," by which premiums were to be drawn automatically from his checking account with Growth Bank. Pursuant to this Guard-o-Matic Premium Arrangement, Guardian made Mr. Moore aware that, although the policy specified payments as due on the fourth of each month, all Guard-o-Matic clients' payments were, as a practical matter, withdrawn on or about the fifteenth. Consistently with this practice, Guardian deducted premium payments from Mr. Moore's designated account each month from January 16, 1995 [1] until July 15, 1996. On July 30, 1996, however, Mr. Moore closed his checking account with Growth Bank, and he did not arrange for the Guardian premiums to be paid from any other source. Consequently, on August 15, Guardian's draft demanding that month's premium was returned unpaid.

On August 21, Guardian notified Mr. Moore that he was being removed from the Guard-o-Matic program and that his method of payment was to be "changed to regular billing." Among other information, the notice contained the following description of Mr. Moore's payment obligations:

        Premium Due 08/04/96   113.50
        Premium Due 09/04/96   113.50
        Amount Due             $267.00

Mr. Moore never paid his August insurance premium, and he died on September 5, 1996.

Discussion

Appellee asserts, and the District Court held, that Mr. Moore died one day too late to collect benefits from the
_____

1. Mr. Moore apparently paid his first three premiums--for October, November, and December of 1994--by a check dated October 31, 1994.

3

Guardian life insurance policy. Under this approach, Mr. Moore's due date for August of 1996 was, per the policy's terms, August 4; the grace period commenced the next day, on August 5; and the grace period expired thirty-one days after the due date, on September 4, causing Mr. Moore's policy to lapse and his coverage to cease. See generally Appellant App. at 89 ("If the premium is not paid by the end of the grace period, the policy lapses as of the date of default. Upon lapse, the policy has no value.").

On the other hand, Ms. Goduti-Moore offers three reasons that the policy had not lapsed as of September 5. First, Ms. Goduti-Moore claims that, since the August 4 due date fell on a Sunday, certain state laws regulating contractual interpretation required that the due date be moved to Monday, August 5. Pursuant to this analysis, the grace period began on August 6, and Mr. Moore's death, on September 5, occurred during the grace period's last day. Second, Ms. Goduti-Moore argues that Guardian's notice of August 21, which described Mr. Moore's payment obligations, was ambiguous. The notice prescribed $113.50 as due on August 4, 1996; $113.50 as due on September 4, 1996; and an apparently total "Amount Due" of $267, for which no due date was articulated. Ms. Goduti-Moore claims that the August 21 notice could reasonably have meant that Mr. Moore's August premium was, as part of the undated "Amount Due," due on the later date contained in the notice, September 4, rather than on the earlier date, August 4. Thus, Ms. Goduti-Moore claims that the policy's thirty-one-day grace period expired on October 5. Third, Ms. Goduti-Moore argues that, by its practice of making automatic withdrawals on the fifteenth of each month, Guardian waived its right, provided by the terms of the contract, to demand payment on the fourth of the month. Hence, Ms. Goduti-Moore asserts that the policy's due date was August 15, and the grace period expired on September 15.

For the reasons given in the subsequent portions of this opinion, we agree with Ms. Goduti-Moore's first argument: Interpreting the contract's grace period in favor of the insured, and applying New York's statute regulating contracts with Sunday due dates, we conclude that Mr.

Moore's premium was due on Monday, August 5. Thus, the thirty-one-day policy's grace period provision began on August 6, and that period did not expire prior to Mr. Moore's death on September 5. Since this analysis decides the appeal in Ms. Goduti-Moore's favor, we think it unnecessary to consider her other arguments.

Premiums Payable on Sunday

Since this diversity case involves the application of state statutory provisions regulating contractual interpretation, a natural starting point would be to determine which state's substantive law applied: New York's or New Jersey's. However, the District Court found it unnecessary to resolve the choice-of-law question; instead, it found a false conflict because the substantive law of New Jersey and the substantive law of New York seemed to the court to be materially indistinguishable. See Dist. Ct. Op. at 8.

Neither party disagreed with the District Court's disposition of the choice-of-law question; moreover, in the presentation of this appeal, each of the parties has expressed the belief that the substantive law of New York (Guardian's place of business and state of incorporation; the place of negotiation and execution of the insurance contract; and the place of payment of premiums) and the substantive law of New Jersey (the decedent's domiciliary state) would both yield the same result.[2]

Since the parties are satisfied with the District Court's determination that the applicable substantive law of New York and the applicable substantive law of New Jersey are equivalent, we will not go behind that consensus. To the contrary, we will assume--arguendo--that the parties' consensus is soundly based. Since the New York statute relating to the construction of contracts whose due dates

_____

2. At oral argument, Ms. Goduti-Moore's counsel, Mr. Belsole, stated, "The policy couldn't have lapsed on the 4th of August `96 because both New York and New Jersey law have a provision--a statutory provision-- that when a Sunday is a date of payment you go to Monday." And to this court's question, "I gather that you're in agreement with Mr. Belsole and, as I understand it, with the District Court, that this case will be decided
the same way whether it's a matter of New York or New Jersey law?", Guardian's counsel replied, "Yes, I am."

fall on weekends and holidays3 is, textually, more fleshed out than the New Jersey statute dealing with a portion of that subject matter,4 we will conduct our analysis within the framework of the New York statute.5

Of the two New York statutes that regulate due dates falling on Sundays, the first is General Construction Law S 25, which governs the interpretation of private contracts:

> S 25. Public holiday, Saturday or Sunday, in contractual obligation; extension of time where performance of act authorized or required on Saturday, Sunday, or public holiday.
>
> Where a contract by its terms authorizes or requires the payment of money or the performance of a condition on a Saturday, Sunday, or public holiday, or authorizes or requires a payment of money or the performance of a condition within or before or after a period of time computed from a certain day, and such period of time ends on a Saturday, Sunday, or public holiday, unless the contract expressly or implicitly indicates a different intent, such payment may be made or condition performed on the next succeeding business day . . . with the same force and effect as if made or performed in accordance with the terms of the contract.

N.Y. Gen. Constr. Law S 25 (McKinney 1999) (hereinafter "S 25"). The second is General Construction Law S 25-a, which concerns public statutes and regulations:

> S 25-a. Public holiday, Saturday or Sunday in statutes; extension of time where performance of act is due on Saturday, Sunday or public holiday
>
> 1. When any period of time, computed from a certain day, within which or after which or before which an act is authorized or required to be done, ends on a Saturday, Sunday or a public holiday, such act may be

_____

3. N.Y. Gen. Constr. Law S 25 (McKinney 1999).

4. N.J. Stat. Ann. 36:1-1 (1999).

5. Within their appellate briefs and oral arguments, the litigants have focused attention almost exclusively on the application of New York law.

6

done on the next succeeding business day . . . except that where a period of time specified by contract ends on a Saturday, Sunday or a public holiday, the extension of such period is governed by section twenty-five of this chapter.

N.Y. Gen. Constr. Law S 25-a (McKinney 1999) (hereinafter "S 25-a").

In briefing this appeal, Goduti-Moore has relied on S 25-a. The opening words of the caption of S 25 -"Public holiday, Saturday or Sunday, in contractual obligation" – strongly imply that S 25 has greater pertinence to the private contractual dispute presented in the case at bar than S 25-a, the opening words of whose caption are "Public holiday, Saturday or Sunday in statutes." This implication is markedly enhanced by the fact that S 25-a expressly defers to S 25 when a contract is involved. 6 At oral argument, Guardian attempted to justify its focus onS 25-a by contending that S 25-a and S 25 are equivalent. But appellee's argument on this point seems incomplete for two reasons. First, the text of S 25 is broader than S 25-a in potentially relevant ways. Section 25 has two clauses: one, which deals with specified dates that fall on Sundays, and another, which concerns periods of time that end on Sundays. See supra. The terms of S 25-a, however, only include the latter of these clauses, which regulates time periods ending on Sunday; S 25-a does not appear to govern specified dates that fall on Sundays. Thus, even if S 25 and S 25-a were parallel with respect to periods of time, S 25-a has little direct relevance to the issue presented here, namely, treatment of a particular "due date" that falls on Sunday.

Second, although S 25 and S 25-a were passed simultaneously and have similar general purposes, their different legal contexts -- one regulating private contracts and the other regulating public statutes -- implicate different norms and consequences, which further support reading S 25 more broadly than S 25-a. For example,

_____

6. "[W]here a period of time specified by contract ends on a Saturday, Sunday or a public holiday, the extension of such a period is governed by section twenty-five of this chapter."

Burgess v. Long Island Railroad Authority, 587 N.E.2d 269 (N.Y. 1991) -- a S 25-a case on which Guardian relies -- concerned a statutory "stay" applied to the limitations period in suits against New York public authorities. Under New York law, plaintiffs suing such authorities were required to allege that the defendant had not acted on their grievance despite thirty days' notice thereof. According to a separate statute, this thirty-day notice period was excluded from the one year limitations period, operationally allowing plaintiffs one year and thirty days to commence their suit. In his case, Mr. Burgess claimed that the stay should be extended by three days beyond this year and thirty days, since his injury occurred on Friday evening, after the Long Island Railroad Authority had closed for the weekend. Thus, he was unable to file his grievance immediately after his injury occurred. Notwithstanding the fact that his suit accrued on Friday, Mr. Burgess asserted that his limitations period, including the thirty-day stay, should have begun on Monday, and he should have been allowed to file his lawsuit within a year and thirty-three days of his injury.

The New York Court of Appeals rejected Mr. Burgess's argument, inter alia, out of respect for "the interests of uniformity" that arise in applying statutes of limitations to varied administrative contexts. Id. (disapproving any rule "whereby the time in which to commence an action against a public authority would vary case to case"). Because public regulations tend to regulate broad categories of actors and activities, providing a uniform standard was one apparent impetus for the Burgess court's interpretation of S 25-a. With respect to S 25, however, the affected contracts govern the actions of particular parties, who sign and have access to the particular details of said contracts. Thus, the interests in administrative uniformity and in respecting general public expectations, which seemed to concern the court in Burgess, appear substantially reduced in the context of S 25. Based on the two statutes' distinct language and their different legal contexts, we conclude that S 25 and S 25-a are not equivalent. Thus, the New York statute applicable to the present controversy isS 25, which regulates private contracts.

As quoted more fully supra, S 25 provides that "[w]here a contract by its terms authorizes or requires the payment of money . . . on . . . Sunday, . . . unless the contract expressly or implicitly indicates a different intent, such payment may be made . . . on the next succeeding business day." N.Y. Gen. Constr. Law S 25. Thus, the vital legal question is whether the terms of Guardian's insurance policy could, when read in the light most favorable to Mr. Moore, as the insured, reasonably be construed as either "authoriz[ing]" or "requir[ing]" the payment of money on Sunday, August 4th, for purposes of S 25.

The relevant portions of Guardian's policy read as follows:

> Premium Payment
>
> All premiums, including the first, are payable in advance. After the first premium, premiums are payable annually . . . . Premiums may be paid . . . [semi-annually, quarterly, or] in any other manner acceptable to Guardian. . . . [A] change [in payment frequency] must result in a premium falling due on each policy anniversary.
>
> Due Date and Default
>
> The premium due date is the date on which the premium is payable. Any premium that is not paid on its due date is in default; this due date is the date of default.
>
> Grace Period
>
> Guardian allows a grace period of 31 days after the due date for premium payments.

Appellants App. at 89.

In construing S 25, New York's courts apparently have not yet considered a case such as this, where an insurance contract's due date is followed by a grace period. 7 Our

---

7. Guardian asserts that "New York decisions dealing with [S 25-a] clearly reject [appellant's] argument." However, cases analyzing S 25-a are not overly helpful with respect to the present appeal, which concerns a portion of S 25 that is not contained in S 25-a. Moreover, even if cases concerning S 25-a were legally pertinent, the three decisions cited by Guardian have materially distinct facts from the case at bar:

9

analysis of this issue of first impression proceeds in two steps. First, we hold that the policy's ambiguous language

_____

Desmond-Americana v. Jorling, 153 A.D.2d 4 (N.Y. App. Div. 1989), applied S 25-a to New York's Administrative Procedure Act. The latter statute requires agencies to adopt proposed rules within 180 days of the last public hearing held, unless a continuation notice is filed before that
time. An agency may file a maximum of two such notices, each of which would add 90 days to the original 180-day period. In Desmond-Americana, the Department of Environmental Conservation held its last hearing on November 9, 1987; two timely continuation notices were filed, which extended the adoption period through Thursday, November 3, 1988; but the agency did not file its notice of adoption until Friday, November 4. The agency asserted that its notice was not untimely filed because the original 180-day adoption period had ended on Saturday, May 7, 1988. The agency argued that, since, underS 25-a, it could (counterfactually) have filed its continuation notice on Monday, May 9, two extra days should be added to the final adoption deadline of November 3. The Desmond-Americana court agreed that S 25-a would have allowed a timely extension notice on Monday, May 9. But the court held that, under the Administrative Procedure Act, the effect of a hypothetical extension filed on that date would only have been to add 90 days to the 180-day period measured from the last public hearing. Thus, although the agency could have filed its continuation notice on Monday without penalty, the total number of days added by such filing, for purposes of the Administrative Procedure Act, would not have changed; the agency's notice of adoption still was required within 360 days of the last public hearing.

Abrams v. Design Works, Inc., 198 A.D.2d 252 (N.Y. App. Div. 1993), applied S 25-a to N.Y. C.P.L.R. 214(5), which provides a three-year statute of limitations for personal injury suits, and to N.Y. C.P.L.R. 203(b)(5), which allows a 60-day extension if a summons is delivered to the sheriff. In Abrams, the plaintiff 's action accrued on March 3, 1987; he forwarded the summons and complaint to the sheriff on February 28, 1990, which extended the limitations period until Wednesday, May 2, 1990; but the corporate defendant was not served until Friday, May 4, 1990. Mr. Abrams argued that, since the initial three-year limitations period ended on Saturday, March 3, 1990, two days should be added to the end of the extension period. The Abrams court disagreed, holding that the effect of the statutory extension, which added sixty days to the ordinary three-year limitations period, was unchanged by the fact that the last day for obtaining such an extension fell on Saturday. The extension statute did not grant sixty days from the time said extension was filed; rather, it granted an extra sixty days from the date of accrual.
Thus, regardless of S 25-a, the maximum total time available to Mr. Abrams, under N.Y. C.P.L.R. 203 and 214(5), was three years and sixty days from March 3, 1987.

defining the term "due date" could reasonably be construed as "authoriz[ing]" or as "requir[ing]" payment on Sunday, August 4; either interpretation would suffice to justify applying S 25 to the policy's due date. Second, we hold that, by virtue of S 25, Mr. Moore could have paid his insurance premium on August 5 without being in default; therefore, the due date (per the contractual provisions quoted supra)

_____

Burgess v. Long Island Railroad Authority, 587 N.E.2d at 269, applied S 25-a to Pub. Auth. 1276(1) and (2), which provide a one-year limitations period for suits against public authorities and which require that grievances be presented directly to such authorities for thirty days before a lawsuit may be filed, and to N.Y. C.P.L.R. 204(a), which excludes this thirty-day "stay" from limitations period calculations. The Burgess plaintiff was allegedly injured on the tracks of the Long Island Railroad on Friday, September 2, 1988, after business hours. He did not serve the defendant with a summons and complaint until Tuesday, October 3, 1989, which was one year and thirty-one days after his accident. The plaintiff claimed that his limitations period should be extended by three days because he could not have presented his grievance to the defendant, for purposes of Pub. Auth. 1276(2), until Monday, September 5, 1988. The court rejected Mr. Burgess's argument because he had not been required, under any statute, to present his grievance to the agency on the very day of his accident. On the contrary, Mr. Burgess could have satisfied Pub. Auth. 1276(2) by presenting his grievance to the authority on any day within the statutorily allotted year. Thus, the court interpreted N.Y. C.P.L.R. 204(a)'s "stay" as merely having extended the ordinary one-year limitations period to one year and thirty days; and the court held that this extended period, measured from the accrual date, should have the same total duration, regardless of whether the action accrued on a Saturday.

Each of the above cases involves a procedure for extending a statutory period of time, pursuant to which the lengthened period is measured by the event marking the original period's beginning. Thus, the fact that S 25-a grants such plaintiffs an "extra" day to seek their extension does not affect the date of the final, extended deadline; for, whether an extension were obtained with or without the aid of S 25-a, the total duration allotted was simply the sum of the original period and the extension. In contrast, the grace period in Ms. Goduti-Moore's case is explicitly measured by the due date, i.e., the end of the standard payment period. Therefore, if S 25 granted Mr. Moore one additional day to pay his premium before going into default, that "extra" day would delay both the date on which the grace period began and the date on which the policy would have lapsed.

11

also could be reasonably construed as August 5. Since the grace period began the day after the due date, i.e., on August 6, Mr. Moore's death on September 5 occurred during the last day he was entitled to benefits under the policy.

A. Mr. Moore's Payment Was "[A]uthorize[d]" on Sunday

As the District Court correctly noted, the above-quoted terms of the policy are not ambiguous with respect to the numerical date they purport to specify. In Mr. Moore's case, the "policy anniversary" was October 4, and he had arranged for a monthly payment schedule; thus, premium payments would ordinarily be due on the fourth of any given month. Pursuant to S 25, however, if the terms of Mr. Moore's policy "authorize[d]" payment of money on a Sunday, that payment could be made on the succeeding business day "with the same force and effect," unless the contract indicated some specific, contrary intent. 8

We find that Guardian's policy is at least ambiguous as to whether the term "due date," as the "date on which the premium is payable," can be read as "authoriz[ing]" a premium payment on August 4 sufficiently for purposes of S 25. It might be argued on Guardian's behalf that the policy "authorize[d]" premium payments during the grace period, but not on the due date itself. Support for such an interpretation might arise from Guardian's practice, per the Guard-o-matic Premium Arrangement, of drawing payments on the fifteenth of each month, even though such withdrawals would occur during the policy grace period with respect to almost all of Guardian's clients. 9 Under this interpretation, the "due date," despite its apparently exhortative title, would be construed as a pure formality, which marks the beginning of the grace period, but which is not a date of any substantive significance in terms of "authoriz[ing]" payments. Thus, S 25 would not have applied to the policy's due date provision; the premium

_____

8. Guardian has not argued that such contrary intent is indicated here. Indeed, Mr. Moore's policy does not appear to have contemplated issues surrounding Sunday due dates at all.

9. The exception being any Guardian clients whose "policy anniversary" happens to fall on the fifteenth.

would have remained due on August 4, per the policy's explicit terms; and the thirty-one-day grace period would have commenced on August 5 and terminated on September 4.

But the language and operation of Guardian's policy also admits of another reasonable interpretation, pursuant to which the due date provision did "authorize[ ]" payment for purposes of S 25. The policy's definition of due date as the "date on which the premium is payable" seems explicitly to contemplate premiums' payment as being permitted and appropriate on that day. Indeed, it is difficult to understand a "date" on which when premiums are "payable" might be, if it were not a date on which such payments were "authorize[d]."

The idea that premium payments were authorized on the policy's due date finds further support in the policy's requirement that payments must be rendered on the due date if an insured wishes to avoid default. Guardian suggests that the above interpretation of the policy's due date is inconsistent with the policy's grace period provision, which protects from financial burden any insureds who pay premiums after the due date, provided that such payments are made within thirty-one days. But it does not seem unreasonable, much less illogical, to suggest that both the due date and the grace period serve to "authorize[ ]" premium payments. Thus, interpreting the terms of the contract in favor of the insured, we conclude that the language and structure of the policy show that Guardian's insurance contract could reasonably be interpreted as "authoriz[ing]" payment on Sunday, August 4. And that fact alone is sufficient to bring the policy's due date provision within the scope of S 25.

B. Mr. Moore's Premium Payment Was "[R]equire[d]" on Sunday

Parallel logic suggests that the policy also could be construed as "requir[ing]" payment on August 4 for purposes of S 25. By its terms, the "date on which premiums are payable" seems to "require[ ]" payment on the designated due date, and so does the contractual declaration that those who do not pay on that date are in "default."

13

In response, it could be argued, on Guardian's behalf, that Mr. Moore's payment was not actually "require[d]" on August 4, since no financial penalty for non-payment could be imposed until after the grace period had expired. The interesting issue of statutory construction, however, is whether any such financial penalty is necessary for a due date to "require[ ] payment" under S 25. For two reasons, we hold that it is not. First, by placing the word "require" and "authorize" together, and by focusing on what a contract prescribes "by its terms," the statutory text suggests that any explicit, formal designation of a "require[d]" payment—such as the designation in Mr. Moore's policy—is properly within the province of S 25.

Second, a contrary interpretation of S 25, which would define the term "requires" as necessarily including a financial penalty of some kind, would demand that courts decide what form of penalty would be sufficient. One possible interpretation following this approach would hold that only a "substantial" penalty, relative to the total value of the contract, could truly "require" payment on a certain date. Presumably, under such analysis, if Mr. Moore were charged x percent of his premium for nonpayment on the due date, that due date would be deemed to have "require[d] . . . payment" for S 25 purposes, but if his penalty were some lesser percent, y, the due date would not have done so. Discerning what degree of financial burden would constitute a requirement under such a reading of S 25 would pose a formidable task for New York courts to undertake. Nothing in S 25's text, history, structure, or purpose appears to mandate that such delicate lines be drawn, however, and we further find no basis to conclude that such a task is implicit in the statute.

Another possible interpretation of S 25 would demand only a de minimis financial penalty before a payment were deemed "require[d]." The necessity of some formal marker of the parties' intent—in the form of a de minimis penalty or otherwise—before invoking S 25 would seem curious, however, since S 25 itself seems intended to fill contractual "gaps," where contractual intent has not been clearly expressed. Also the text, history, structure, and purpose of S 25 provide no indication that such an anomalous result is statutorily necessary.

14

On the contrary, S 25's broad text--which seems to apply to all "require[d]" payments, not only to those whose default is financially penalized--is confirmed by the statute's general legislative purpose: protecting contracting parties from having to make payments on Sunday. A more urgent case for statutory protection would no doubt arise in cases where financial hardships followed from default, but we find no reason to believe that New York's statute was intended to apply only to such cases. Especially when the policy's terms are construed in the insured party's favor, Mr. Moore's contract with Guardian appears formally to have "require[d]" payment of his insurance premium on Sunday, August 4. And we find that New York law protects contracting parties from any "require[d]" payment on Sunday, even when no direct financial burden falls on those who fail to pay.

C. Mr. Moore's Grace Period Began on Tuesday

Having concluded that Mr. Moore could have paid his premium on Monday, August 5 without falling into default, the final task is to explain how this conclusion affects the policy's grace period. Guardian's policy provides for "a grace period of 31 days after the due date for premium payments," and it further defines the term"due date" as "the date of default." Since the "date of default," by the operation of S 25, did not occur until Monday, August 5, it is reasonable to construe the contractually-defined "due date" as also having moved to August 5. Hence, by the policy's terms, the thirty-one day grace period began on Tuesday, August 6, and Mr. Moore's life insurance coverage with Guardian had not yet lapsed on September 5, the day he died.

For the foregoing reasons, the District Court's decision granting summary judgment to Guardian is reversed, and the case is remanded for further proceedings consistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

15