Terry WILCOX, Plaintiff,

v.

PEPSICO, INC. and Pepsi–Bebidas Purficades De Acapulco, S.A.D.E.C.V., Defendants.

No. CIV. 99–4347.

United States District Court,
E.D. Pennsylvania.

Aug. 17, 2001.

Patrick T. Henigan, Graeff, Henigan & Dugan, Philadelphia, PA, for plaintiff.

Joseph A. Ricchezza, Rawle & Henderson, Philadelphia, PA, Charles W. McCammon, Rawle & Henderson, LLP, Philadelphia, PA, for defendant.

### Memorandum

GILES, District Judge.

Upon consideration of Pepsico's Motion to Dismiss or for Summary Judgment (Docket # 8), and the response filed thereto, the motion is GRANTED, and the complaint, as to Pepsico, is dismissed.

On December 22, 1997, Terry Wilcox ("Wilcox") was allegedly injured in Mexico by a truck that was owned and operated by Pepsi–Bebidas Purficades de Mexico ("Pepsi–Bebidas"), a Mexican Company engaged in the business of bottling the Pepsi soda drink. Wilcox sued Pepsico, a North Carolina corporation with its principal place of business in the state of New York, under the theory that Pepsi–Bebidas was either a joint venture partner, or an agent of Pepsico, making Pepsico legally responsible for damages.

Relative to the argument that negligence should be imputed to Pepsico because Pepsico had entered into a joint venture agreement with Pepsi–Bebidas' parent company, Gemex, this court must first determine which jurisdiction's law to apply to this claim, assuming that a joint venture existed, a fact in dispute. A federal court sitting in diversity must apply the choice of law principles of the state in which it sits. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania choice of law rules require this court to give effect to the choice of law provision in the joint venture contract. *Miller v. Allstate Insur. Co.*, 763 A.2d 401, 403 (Pa.Super.2000). The contract explicitly states, "This agreement shall be governed by and construed in accordance with the internal laws of the state of New York." (Plaintiff's Answer to Defendant's Motion, Exhibit B, p. 67). New York law will not impute the negligence of a subsidiary on its parent corporation or a joint venturer of a parent corporation unless the parent "exercised complete domination of the corporation in respect to the transaction attacked; and . . . that such domination was used to commit a fraud or wrong against the plaintiff." *Morris v. New York State Dept. of Taxation and Finance*, 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993).

Here, Wilcox makes no allegations whatsoever that Gemex exercised complete domination over Pepsi–Bebidas, much less that Gemex used the corporate form to commit fraud. Since Pepsi–Bebidas' alleged negligence cannot be imputed to Gemex, there is no basis to impute the negligence to Pepsico under the theory of a joint venture agreement. Wilcox next claims that Pepsi–Bebidas was the Mexican agent of Pepsico because of the bottling agreement between the two com-

panies. Since there is no choice of law provision in the bottling agreement, Pennsylvania law requires that this court determine if a false conflict exists before determining which state or country's law applies. A false conflict can exist if one of the jurisdictions has no real interest in having its laws applied, *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991), or if the law of the two jurisdictions is substantially the same. *Guardian Life Insurance v. Goduti–Moore*, 229 F.3d 212, 214 (3d Cir.2000).

■ The governing law concerning whether the bottling contract between Pepsico and Pepsi–Bebidas constituted an agency agreement is substantially the same in all relevant jurisdictions. In Mexico, commercial matters, such as whether a commercial contract[1] created an agency relationship, are governed by the Mexican Commercial Code and the Civil Code for the Federal District. *See* Michael W. Gordon, et al., *Establishing an Agency or Distributorship in Mexico*, 4 U.S.-Mex. L.J. 71, 81 (1996); James E. Richt, *Mexican Law Library, Special Commentary to the Financial Laws*, 1997 WL 685079 (1997). The Civil Code of the Federal District states that, "Agency is a contract whereby an agent obligates himself to act on behalf of a principal and perform those juridical activities he is directed to do." C.C.D.F. art. 2546, 1996 WL 917932.

■ Similarly, Pennsylvania law provides that "the three basic elements of agency are: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Basile v. H & R Block*, 563 Pa. 359, 761 A.2d 1115, 1120 (2000)(internal

quotation marks omitted). The requirements of agency in New York, Pepsico's principal place of business, and North Carolina, where Pepsico is incorporated, are substantially the same. *Maurillo v. Park Slope U–Haul*, 194 A.D.2d 142, 606 N.Y.S.2d 243, 246 (N.Y.App.Div.1993) ("Agency is a legal relationship between a principal and an agent. It is a fiduciary relationship which results from the manifestation of consent of one person to allow another to act on his or her behalf and subject to his or her control, and consent by the other so to act."); *Outer Banks Contractors v. Daniels & Daniels Construction*, 111 N.C.App. 725, 433 S.E.2d 759, 762 (1993)("Agency is the relationship that arises from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.") (internal quotation marks omitted).

■ Under any of these definitions of agency, Wilcox has alleged no facts that would give rise to a reasonable inference that Pepsi–Bebidas was acting on behalf of Pepsico, as opposed to acting as an independent contractor or franchisee. Importantly, the parties defined their relationship as other than principal/agent. The bottling agreement specifically stated that, "Nothing herein provided shall constitute or be deemed to constitute any relationship or agency, joint venture or partnership between [Pepsi–Bebidas] and [Pepsico]." (Plaintiff's Answer to Defendant's Motion, Exhibit C, p. 24). This explicitly provided that the bottling agreement was not meant to confer upon either party the benefits or the responsibilities of an agency relationship.

The bottling agreement provides that Pepsi–Bebidas is the only company with

---

1. Mexican Commercial Code Article 75(7) deems contracts involving manufacturing to be commercial transactions. Cod.Com. art. 75, 1996 WL 918535.

the right to bottle, sell, and distribute the Pepsi beverage in a particular territory. (Plaintiff's Answer to Defendant's Motion, Exhibit A, p. 1). The agreement also provides that Pepsi–Bebidas must follow Pepsico standards in handling and processing the concentrate, adverting, labeling, and bottling. (Exhibit A, p. 6–7, 10). Pepsico also has the right to inspect Pepsico's facilities, including Pepsi–Bebidas' trucks. (Exhibit A, p. 7). Further, Pepsi–Bebidas cannot transfer its interest in Pepsi–Bebidas, while bound by the bottling agreement, without consent from Pepsico. (Exhibit A, pp. 14–17).

The bottling agreement grants exclusive bottling privileges in exchange for Pepsi–Bebidas following Pepsico's standards for bottling Pepsi. The agreement provides that if any of these standards is not met, Pepsico has the right to terminate the bottling agreement. (Exhibit A, p. 18–19). All that Wilcox has alleged is that Pepsico and Pepsi–Bebidas entered into an agreement by which Pepsi–Bebidas agreed to abide by these standards and agreed to consent to inspection if Pepsico wished to investigate whether the standards were met. However, there are no facts alleged that would give rise to a reasonable inference that Pepsico was in continuous control over the activities of Pepsi–Bebidas or that Pepsi–Bebidas was acting on behalf of Pepsico.

Courts have universally held that such agreements, standing alone, do not constitute an agency relationship. *See, e.g., Murphy v. Holiday Inns, Inc.,* 216 Va. 490, 219 S.E.2d 874, 876–78 (Va.1975)(finding no agency agreement when the contract required a franchisee to conduct its hotel business according to the Holiday Inns' standards, submit to periodic inspections from Holiday Inns, and get consent from Holiday Inns before selling any interest in the franchise); *Holiday Inns, Inc. v.*

*Newton,* 157 Ga.App. 436, 278 S.E.2d 85, 86 (1981)(same); *Wood v. Shell Oil,* 495 So.2d 1034, 1039 (Ala.1986)(finding no agency agreement when franchisee was required to maintain premises based on Shell Oil's specifications, consent to inspection by Shell Oil, and allow Shell Oil to train its employees). For all these reasons, Wilcox's claim that Pepsi–Bebidas was the agent of Pepsico is dismissed.

█  Finally, Wilcox argues in his answer to Pepsico's motion to dismiss, that the bottling agreement alone meant that Pepsico and Pepsi–Bebidas were in a joint venture under New York state common law. Even if New York law were to apply to this question, a New York state court would find a joint venture agreement only if there was some agreement that profits and losses were to be shared by the participants. *Martin Food Distributors v. Berkowitz,* 726 N.Y.S.2d 648, 649 (N.Y.App. Div.2001); *Mertz v. Seibel Realty,* 265 A.D.2d 925, 696 N.Y.S.2d 598, 599–600 (N.Y.App.Div.1999)("An indispensable element of a joint venture is an understanding to share in the profits of the business.")(internal quotation marks omitted). There is no such allegation in the complaint. For the reasons stated above, under New York law, a joint venture theory of liability fails.

For all these reasons, Pepsico's motion to dismiss is granted.

### Order

AND NOW, this 16th day of August, upon consideration of Pepsico's Motion to Dismiss (Docket # 8), it is hereby ORDERED that the motion is GRANTED and the complaint as to Pepsico is DISMISSED.